**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Michael Cozzi, Vincent Cozzi, and Angeline Cozzi, | |
|     Plaintiffs, | |
| v. | Case No: |
| Village of Melrose Park, an Illinois Municipal Corporation, and Ronald Serpico, in his individual capacity, | Jury Trial Demanded |
|     Defendants. | |

## COMPLAINT

Plaintiffs Michael Cozzi ("Michael"), Vincent Cozzi ("Vincent"), and Angeline Cozzi ("Angeline"), (collectively "Plaintiffs") through their attorneys, Gianna Scatchell, Cass T. Casper, Navarrio Wilkerson, and Disparti Law Group P.A., bring this Complaint against Defendants, Village of Melrose Park ("VMP") and Ronald Serpico ("Serpico") (collectively "Defendants") and allege upon personal knowledge regarding each of them and their own acts, and on belief, regarding all other matters:

## INTRODUCTION

1. Vincent and Angeline Cozzi are two Melrose Park octogenarian residents. They found themselves at the center of a coordinated campaign of harassment by certain VMP officials. Defendants issued Plaintiffs over 53 bogus tickets and numerous parking tickets in retaliation for asserting certain constitutional rights. These tickets occurred on a near daily basis since December 2020. Plaintiffs now face over $26,000.00 in fines including a property lien for $15,500.00. Plaintiff's son Michael has received threatening phone calls and his car was

1

vandalized. The VMP has demonstrated no indication that it intends to halt its code enforcement against Plaintiffs.

2. Plaintiff brings this action to redress acts of equal protection (Class of One) violations pursuant to 42 USC § 1983 (Count I); Denial of Due Process Under the Fourteenth Amendment (Count II); 42 USC § 1983 Deprivation of First Amendment Rights of Speech and Expression (Count III), 42 USC § 1983 Policy to Retaliate against Plaintiffs to Suppress their First Amendment Rights (Count IV); and Indemnification (Count V).

## JURISDICTION, VENUE, AND PARTIES

3. The Court has subject matter jurisdiction over this case under 28 USC § 1331 because this action presents federal questions and seeks to redress the deprivation of rights under the First and Fourteenth Amendments to the United States Constitution and pursuant to 42 U.S.C. § 1983.

4. Venue is proper in this District under 28 U.S.C. § 1391(e)(1) because the events giving rise to the claims took place in the Northern District of Illinois.

5. Plaintiff Michael Cozzi is a resident of Melrose Park, Illinois.

6. Plaintiff Vincent Cozzi is an elderly resident of Melrose Park, Illinois.

7. Plaintiff Angeline Cozzi is an elderly resident of Melrose Park, Illinois.

8. Defendant Village of Melrose Park ("VMP") is a municipality incorporated under the State of Illinois laws. It funds both the code enforcement regime and the municipal court system of the Village.

9. Defendant Ronald Serpico is an elected official who has served as the VMP mayor for over 20 years. Throughout his tenure, he has served on various local and state boards, including currently serving as a commissioner for the Illinois Court of Claims. Defendant Serpico is also

2

an attorney with a private practice within the VMP. Defendant Serpico is a final policymaker and serves as the president of the VMP. Defendant Serpico engaged in the conduct complained of while acting under the color of law. He is sued in his individual capacity.

## FACTUAL ALLEGATIONS

10. Plaintiffs Vincent and Angeline are lifelong Melrose Park residents who live with their son, Michael, who is also their caregiver.

11. In 2019, when Vincent and Angeline moved into their new home, they put six outdoor plastic lawn chairs in their front yard, as depicted below.



12. Vincent and Angeline would sit outside on their lawn chairs daily.



3

13. The COVID-19 pandemic has amplified the importance of socially distant forms of expression, making the right to have chairs on one's personal property even more poignant. COVID-19 continues to impact the nation and has been especially impactful in Cook County. COVID-19 also has disproportionately impacted senior citizens.

14. Throughout the pandemic, Vincent and Angeline's lawn chairs have been the safest way to socially distance themselves from others without becoming socially isolated or exposed to Covid-19.

### DEFENDANTS' TARGETED HARASSMENT

15. Defendants allegedly took issue with the Plaintiff's lawn furniture and later with Plaintiffs' flag, political sign, and religious decorations.

16. For example, on or about August 5, 2020, two VMP code enforcement officers, Anthony Sabatino ("Sabatino") and Phil Nocita ("Nocita") arrived at the Plaintiffs' residence, and Sabatino handed Michael two tickets and stated that these tickets "are from the Mayor, not us."

17. Defendant VMP cited Vincent for creating "nuisances" and for "unsanitary conditions."



18. The tickets did not explain how Vincent was creating unsanitary conditions or nuisances.

19. The total fine for the two tickets was $1,000.00.

20. Police Sergeant Rodriguez accompanied Sabatino and Nocita to serve these tickets in person.

21. Police escorts are not the typical protocol for serving code enforcement violations.

4

22. Plaintiffs did not commit the violations listed on the tickets.

23. Plaintiffs were not committing any crime, nor were they resisting arrest.

## EFFORTS TO COMPLY WITH THE CODE ENFORCEMENT

24. Michael unsuccessfully tried to comply with code enforcement to stop the targeted violations.

25. Michael text messaged with Code Enforcement officer Bill Rich ("Rich") at least twice and even attempted to arrange a home visit.

26. Rich agreed to the home visit, but never showed up and then stopped responding to Michael.

27. Michael also attempted to contact the VMP Director of Code Enforcement, Billy Campanelli ("Campanelli") to resolve the situation. Campanelli either blocked or ignored Michael's phone calls and text messages.

28. Similarly, other VMP employees ignored Michael's attempts to discuss the situation.

29. Another homeowner friend contacted Campanelli to resolve the situation, and Campanelli told him to "stay out of the Cozzi matter."

## DEFENDANTS' HARASSMENT AND RETALIATION

30. Plaintiffs are on a fixed income and the volume and cost of these citations will financially cripple them.

31. Faced with few options, Michael began to attend various public meetings in Melrose Park and post public Facebook videos and statements to bring attention to these grievances and criticize the VMP's treatment of his parents.

32. In response to Plaintiffs' purported non-compliance and public grievances, Defendants began a targeted campaign to bully, harass, and retaliate against them for asserting their constitutional rights.

33. The acts constituting harassment and retaliation by the Defendants include repeatedly issuing Plaintiffs tickets, ringing their doorbell to deliver tickets on Saturdays and Sundays, leaving warning notes, improperly surveilling and patrolling Plaintiffs' house, putting a lien on their property, and threatening Michael with physical violence.

34. On or about December 1, 2020 Plaintiffs decorated their front yard for Christmas:



35. On December 1, 2020, the same two code enforcement officers came to Plaintiffs' house and they told Michael to "put the clutter away" because their "boss" had received several anonymous emails complaining about the Plaintiffs' lawn chairs, political sign, political flag, and Christmas decorations.

36. Michael informed code enforcement officers that the chairs allowed his elderly parents to have socially distanced company outside and that his parents used the chairs for additional support.

37. Sabatino acknowledged that he knew that Vincent and Angeline were elderly and in ill health by stating: "[y] ou've given me a reason [for having the chairs outside]."

38. The code enforcement officers left and did not issue Vincent or Angeline any citations.

39. On or about December 2, 2020, Michael received a "warning" letter on his car windshield from a police officer admitting that, "I was **told** that if I see your car parked on 15th [ave] in violation

[sic] to issue [you] a ticket . . . and that **the other shifts were advised about this situation**."
(*emphasis added*).

40. The fact that Melrose Park police officers now required direction to perform a primary function of their position as traffic enforcement suggests that Defendants conspired and selectively applied and enforced its traffic ordinances against Michael.

41. From December 3, 2020 to February 18, 2021, Defendant VMP issued Vincent and Angeline at least 53 more $500 per offense municipal code citations for alleged "nuisances" and "front law clutter" all purporting to be in violation of VMP Code § 8.048.050.

42. VMP Code § 8.048.050 governs "Noxious refuse on property," and states in relevant part:

No part or the contents of, or substance from any sink, privy or cesspool, nor any manure, ashes, garbage, offal, rubbish, dirt, junk, nor any refuse or waste or thing which by its decomposition could, or would become offensive to human beings or detrimental to health, or tend to injure the character of the property in the vicinity thereof, or create or tend to create a nuisance, shall be by any person thrown, deposited or placed upon any property within the Village, whether such property is enclosed or otherwise, without the written permission of the board.

7

| | Day | Date | Name | Offense | Ordinance | Ticket # | Fee | Court Date |
|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | |
| 2 | Weds. | 8/5/2020 10:00am | Vincent Cozzi | Unsanitary Conditions | Ch. PM § 302 Ord .1 | 3514 | $500.00 | |
| 3 | Weds. | 8/5/2020 10:30am | Vincent Cozzi | Nuisances | Chapter PM | 3516 | $500.00 | |
| 4 | Thurs. | 12/3/2020 10:00am | Vincent & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4321 | $500.00 | 1/5/21 |
| 5 | Mon. | 12/7/2020 9:00am | Vincent & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4324 | $500.00 | 1/5/21 |
| 6 | Tues. | 12/8/2020 9:30am | Vincent & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4451 | $500.00 | 1/5/21 |
| 7 | Weds. | 12/9/2020 10:00am | Vincent & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4452 | $500.00 | 1/5/21 |
| 8 | Thurs. | 12/10/2020 10:30am | Vincent & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4453 | $500.00 | 1/5/21 |
| 9 | Fri. | 12/11/2020 11:00am | Vincent & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4454 | $500.00 | 1/5/21 |
| 10 | Mon. | 12/14/2020 9:00am | Vincent & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4457 | $500.00 | 1/5/21 |
| 11 | Tues. | 12/15/2020 9:30am | Vincent & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4458 | $500.00 | 1/5/21 |
| 12 | Weds. | 12/16/2020 10:00am | Vincent & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4459 | $500.00 | 1/5/21 |
| 13 | Thurs. | 12/17/2020 10:30am | Vincent & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4460 | $500.00 | 1/5/21 |
| 14 | Fri. | 12/18/2020 11:00am | Vincent & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4461 | $500.00 | 1/5/21 |
| 15 | Mon. | 12/21/2020 9:30am | Vincent & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4465 | $500.00 | 2/2/21 |
| 16 | Tues. | 12/22/2020 10:00am | Vincent & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4466 | $500.00 | 2/2/21 |
| 17 | Weds. | 12/23/2020 10:30am | Vincent & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4467 | $500.00 | 2/2/21 |
| 18 | Thurs. | 12/24/2020 11:00am | Vincent & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4468 | $500.00 | 2/2/21 |
| 19 | Mon. | 12/28/2020 9:00am | Vincente & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4473 | $500.00 | 2/2/21 |
| 20 | Tues. | 12/29/2020 10:00am | Vincente & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4474 | $500.00 | 2/2/21 |
| 21 | Weds. | 12/30/2020 10:30am | Vincente & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | None Listed | 4551 | $500.00 | 2/2/21 |
| 22 | Thurs. | 12/31/2020 11:00am | Vincente & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | None Listed | 4552 | $500.00 | 2/2/21 |
| 23 | Mon. | 1/4/2021 9:00am | Vincente & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4563 | $500.00 | 2/2/21 |
| 24 | Tues. | 1/5/2021 10:00am | Vincente & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4566 | $500.00 | 2/2/21 |
| 25 | Weds. | 1/6/2021 10:30am | Vincente & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4567 | $500.00 | 2/2/21 |
| 26 | Thurs. | 1/7/2021 11:00am | Vincente & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4572 | $500.00 | 2/2/21 |
| 27 | Fri. | 1/8/2021 11:30am | Vincente & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4573 | $500.00 | 2/2/21 |
| 28 | Mon. | 1/11/2021 12:00pm | Vincente & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4353 | $500.00 | 2/2/21 |
| 29 | Tues. | 1/12/2021 12:30am | Vincente & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4357 | $500.00 | 2/2/21 |
| 30 | Weds. | 1/13/2021 1:00pm | Vincente & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4362 | $500.00 | 2/2/21 |
| 31 | Thurs. | 1/14/2021 2:00pm | Vincente & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4363 | $500.00 | 2/2/21 |
| 32 | Fri. | 1/15/2021 3:00pm | ncente & Angeline Cozzi/ Trust Number 8002361068 Or Owner of Reco | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4367 | $500.00 | 2/2/21 |
| 33 | Tues. | 1/19/2021 9:30am | Vincente & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4370 | $500.00 | 2/2/21 |
| 34 | Weds. | 1/20/2021 10:00am | Vincente & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4373 | $500.00 | 2/2/21 |
| 35 | Thurs. | 1/21/2021 10:30am | Vincente & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4576 | $500.00 | 3/2/21 |
| 36 | Fri. | 1/22/2021 11:00am | Vincente & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4581 | $500.00 | 3/2/21 |
| 37 | Mon. | 1/25/2021 12:00pm | Vincente & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4584 | $500.00 | 3/2/21 |
| 38 | Tues. | 1/26/2021 1:00pm | Vincente & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4587 | $500.00 | 3/2/21 |
| 39 | Weds. | 1/27/2021 2:00pm | Vincente & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4593 | $500.00 | 3/2/21 |
| 40 | Thurs. | 1/28/2021 3:00pm | Vincente & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4596 | $500.00 | 3/2/21 |
| 41 | Mon. | 2/1/2021 9:00am | Vincente & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4627 | $500.00 | 3/2/21 |
| 42 | Tues. | 2/2/2021 10:00am | Vincente & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | None Listed | 4630 | $500.00 | 3/2/21 |
| 43 | Weds. | 2/3/2021 9:30am | Vincente & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4633 | $500.00 | 3/2/21 |
| 44 | Thurs. | 2/4/2021 10:00am | Vincente & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4636 | $500.00 | 3/2/21 |
| 45 | Fri. | 2/5/2021 10:30am | Vincente & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4637 | $500.00 | 3/2/21 |
| 46 | Mon. | 2/8/2021 11:00am | Vincente & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4638 | $500.00 | 3/2/21 |
| 47 | Tues. | 2/9/2021 12:00pm | Vincente & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4639 | $500.00 | 3/2/21 |
| 48 | Weds. | 2/10/2021 12:30pm | Vincente & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4640 | $500.00 | 3/2/21 |
| 49 | Thurs. | 2/11/2021 1:00pm | Vincente & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4641 | $500.00 | 3/2/21 |
| 50 | Fri. | 2/12/2021 2:30pm | Vincent & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4644 | $500.00 | 3/2/21 |
| 51 | Tues. | 2/16/2021 3:00pm | Vincent & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4645 | $500.00 | 3/2/21 |
| 52 | Weds. | 2/17/2021 3:30pm | Vincent & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4647 | $500.00 | 3/2/21 |
| 53 | Thurs. | 2/18/2021 4:00pm | Vincent & Angeline Cozzi/ or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4476 | $500.00 | 3/2/21 |
| 54 | | | | | | Total fines = | $26,000.00 | |

**43.** For example, in December, the VMP issued Vincent and Angeline $500 tickets on December 3, 2020; December 5, 2020; December 7 - 8, 2020; December 9 – 11, 2020; December 14 – 18, 2020; December 22 – 24, 2020; and December 28 – 31, 2020.

**44.** Defendants even wrote Plaintiffs a ticket on Christmas Eve for their Christmas decorations and lights, which the code enforcement officers callously labeled "nuisance" and "clutter."

**45.** Similarly, in January, the VMP issued Vincent and Angeline $500 tickets on January 4 – 8, 2021; January 11-15, 2021; January 19 – January 22, 2021; January 25 – 28, 2021.

**46.** In February, the VMP issued Vincent and Angeline $500 tickets on February 1-5, 2021, and February 8-12, 2021, and February 16-18, 2021.

8

47. The citations seek enforcement of the ordinance by forcing Vincent and Angeline to pay fines of over $26,000.00.

**THE TROUBLING PATTERN OF TARGETED HARASSMENT REVEALED**

48. The same code enforcement officers wrote nearly every ticket issued to Vincent and Angeline.

49. Each citation contains the same purportedly violative conduct, which is broadly stated as: "Creating a Nuisance, Cluttering the Front Lawn."

50. Vincent and Angeline were cited for inapplicable parts of the Code:

    **a)** The term "noxious" is not defined in the VMP Code, but according to Webster's Dictionary, the term means "harmful or injurious to health or physical well-being."

    **b)** Plaintiffs' front lawn items consist of plastic outdoor lawn chairs, a flag, and Christmas decorations, none of which pose a risk of decomposition or threat to public health. Plaintiffs do not maintain a cesspool, manure, garbage, junk, or anything that could decompose.

    **c)** Ordinance §8.048.050 requires "written board permission" before being allowed to have "noxious refuse" on property.

    **d)** Ordinance §8.048.050 does not list a penalty for violating it.

    **e)** Defendant VMP does not have an ordinance prohibiting homeowners from putting lawn furniture, decorations, political signs, or religious items in their front yards.

    **f)** On further belief, Defendant VMP does not have an ordinance requiring homeowners to remove holiday decorations by a specific date.

51. VMP's tickets do not inform Vincent or Angeline what items constitute a nuisance.

52. The VMP has not offered a solution to mitigate or remedy against the daily fines, such as abatement proceedings or ordering the removal of items from their front lawn.

53. The December 31, 2020, January 8, 2021, and February 1, 2021 citations do not specify which specific part of the Code that Plaintiffs have violated.

54. The February 2, 2021 ticket does not specify how much the fine is.

55. Many tickets issued to Vincent and Angeline have sequential dates and citation numbers, suggesting that they were the only recipients of such violations on several dates.

| Day | Date & Time | Ticket # |
|---|---|---|
| Tues. | 12/8/2020 9:30am | 4451 |
| Weds. | 12/9/2020 10:00am | 4452 |
| Thurs. | 12/10/2020 10:30am | 4453 |
| Fri. | 12/11/2020 11:00am | 4454 |
| Mon. | 12/14/2020 9:00am | 4457 |
| Tues. | 12/15/2020 9:30am | 4458 |
| Weds. | 12/16/2020 10:00am | 4459 |
| Thurs. | 12/17/2020 10:30am | 4460 |
| Fri. | 12/18/2020 11:00am | 4461 |
| Mon. | 12/21/2020 9:30am | 4465 |
| Tues. | 12/22/2020 10:00am | 4466 |
| Weds. | 12/23/2020 10:30am | 4467 |
| Thurs. | 12/24/2020 11:00am | 4468 |
| Mon. | 12/28/2020 9:00am | 4473 |
| Tues. | 12/29/2020 10:00am | 4474 |
| Weds. | 12/30/2020 10:30am | 4551 |
| Thurs. | 12/31/2020 11:00am | 4552 |
| Thurs. | 1/7/2021 11:00am | 4572 |
| Fri. | 1/8/2021 11:30am | 4573 |

56. The citations also reveal a puzzling pattern where the time of the alleged violation is precisely 30 minutes or one hour after the previous day's citation, as depicted in the table below:

| | Day of Week | Date | Time | Ticket # |
|---|---|---|---|---|
| 9 | Tues. | 12/8/2020 | 9:30 AM | 4451 |
| 10 | Weds. | 12/9/2020 | 10:00 AM | 4452 |
| 11 | Thurs. | 12/10/2020 | 10:30 AM | 4453 |
| 12 | Fri. | 12/11/2020 | 11:00 AM | 4454 |
| 13 | Mon. | 12/14/2020 | 9:00 AM | 4457 |
| 14 | Tues. | 12/15/2020 | 9:30 AM | 4458 |
| 15 | Weds. | 12/16/2020 | 10:00 AM | 4459 |
| 16 | Thurs. | 12/17/2020 | 10:30 AM | 4460 |
| 17 | Fri. | 12/18/2020 | 11:00 AM | 4461 |
| 18 | Mon. | 12/21/2020 | 9:30 AM | 4465 |
| 19 | Tues. | 12/22/2020 | 10:00 AM | 4466 |
| 20 | Weds. | 12/23/2020 | 10:30 AM | 4467 |
| 21 | Thurs. | 12/24/2020 | 11:00 AM | 4468 |
| 22 | Mon. | 12/28/2020 | 9:00 AM | 4473 |
| 23 | Tues. | 12/29/2020 | 10:00 AM | 4474 |
| 24 | Weds. | 12/30/2020 | 10:30 AM | 4551 |
| 25 | Thurs. | 12/31/2020 | 11:00 AM | 4552 |
| 26 | Mon. | 1/4/2021 | 9:00 AM | 4563 |
| 27 | Tues. | 1/5/2021 | 10:00 AM | 4566 |
| 28 | Weds. | 1/6/2021 | 10:30 AM | 4567 |
| 29 | Thurs. | 1/7/2021 | 11:00 AM | 4572 |
| 30 | Fri. | 1/8/2021 | 11:30 AM | 4573 |
| 31 | Mon. | 1/11/2021 | 12:00 PM | 4353 |
| 32 | Tues. | 1/12/2021 | 12:30 PM | 4357 |
| 33 | Weds. | 1/13/2021 | 1:00 PM | 4362 |
| 34 | Thurs. | 1/14/2021 | 2:00 PM | 4363 |
| 35 | Fri. | 1/15/2021 | 3:00 PM | 4367 |
| 36 | Tues. | 1/19/2021 | 9:30 AM | 4370 |
| 37 | Weds. | 1/20/2021 | 10:00 AM | 4373 |
| 38 | Thurs. | 1/21/2021 | 10:30 AM | 4576 |
| 39 | Fri. | 1/22/2021 | 11:00 AM | 4581 |
| 40 | Mon. | 1/25/2021 | 12:00 PM | 4584 |
| 41 | Tues. | 1/26/2021 | 1:00 PM | 4587 |
| 42 | Weds. | 1/27/2021 | 2:00 PM | 4593 |
| 43 | Thurs. | 1/28/2021 | 3:00 PM | 4596 |
| 44 | Mon. | 2/1/2021 | 9:00 AM | 4627 |
| 45 | Tues. | 2/2/2021 | 10:00 AM | 4630 |
| 46 | Fri. | 2/5/2021 | 11:30 AM | 4637 |

57. After Michael posted a video of the code enforcement officers coming to his parent's home, the VMP began sending Plaintiffs the tickets via mail.

58. Vincent and Angeline's home is in a trust, and the VMP has been mailing the tickets to their home address without notifying the Trustee, which is not proper notice.

59. Issuing the tickets by mail further violates Vincent and Angeline's rights because the alleged violations continue to accrue for days before they even realize that they have incurred more hefty fines for the alleged continuing violations.

## THREATS AGAINST MICHAEL ESCALATE

60. The VMP, through its code enforcement division, police department, and individual employees embarked on a campaign of harassment and retaliation against Michael as punishment for exercising his right of free speech and right to petition the government for redress of grievances and to try to deter him from exercising such rights in the future.

## SERPICO VERBALLY ASSAULTS MICHAEL

61. Code enforcement officers, Defendant Serpico, and police officers drive past the Plaintiffs' home daily, sometimes several times each day.

62. In one instance, a police officer harassed a person visiting Plaintiffs' home by pulling up behind his car, activating the lights, and inched closer to the vehicle until he drove away.

63. In another instance, on December 7, 2020, Defendant Serpico drove past Plaintiffs' house.

64. When he saw Michael outside, Serpico slowed down his vehicle and rolled down the window.

65. Michael and Serpico exchanged words, which ended with Serpico telling Michael

*"You're lucky I don't get out of this car and beat your ass."*

66. On belief, Defendant Serpico came by Plaintiffs' home with the intent of harassing Michael and trying to provoke a physical altercation.

11

**67.** Serpico did not exit his vehicle and drove away.

## MICHAEL RECEIVES DEATH THREATS

**68.** On December 19, 2020, Michael received the following threatening text message from an unknown phone number, which is (312) 480-8765:

> *"Wait till I see you. I'm splitting your curly wig, you dead beat Cunt. This is my neighborhood; you best get the fuck out before we make you get out."*

**69.** Later on, Michael received the following death threat from a restricted phone number:

> *"Listen, you sheep head motherfucker. I'm going putting to put a piece in the back of your motherfucking skull. I'm going to fuck your mother and your father.*
>
> *Get the fuck out of Melrose Park before you catch a fucking beating. Do you understand me, you fucking cunt motherfucker?*
>
> *Do you have any idea who the fuck you're fucking with?*
>
> *You'll be dead, you motherfucker. I'm telling you one time. Last fucking time I'm going to call you, you piece of shit cunt motherfucker.*"

**70.** Sometime around midnight on December 20, 2020, someone broke Michael's car window.

**71.** On belief, the individual(s) responsible for these unknown threats and vandalism are working with or at the direction of Defendants.

## JANUARY 2021 VILLAGE OF MELROSE PARK ELECTORAL MEETING

**72.** Michael attended a January 2021 VMP meeting that Defendant Serpico presided over.

**73.** While at the meeting, Michael approached the podium and attempted to discuss the barrage of tickets that his parents had been issued with Defendant Serpico.

**74.** Public commentary is allowed at an open government meeting.

*75.* However, Defendant Serpico did not allow Michael to ask any questions or give commentary.

*76.* Defendant Serpico, instead, began a profanity-laden and racial tirade where he berated Michael as summarized below:

*Serpico: Let me tell you something, you're lucky . . . I'm going to tell you something, you're really reaching me. So, do me a fucking favor and sit down and shut the fuck up. How's that? You little fucking prick. Go on, shake your fucking head. You're nothing but a fucking punk.*

*Michael: Why?*

*Serpico: Because you're a jag off!*

*Michael: What did I do to you?*

*Serpico: YOU'RE A JAG OFF! You look like a fucking shine[1] on 15th [ave] because you're doing it to bust fucking balls. That's what you're doing. So, go fuck yourself! GO FUCK YOURSELF!*

*Michael: You guys are busting my balls. Did you know my window got broken?*

*Serpico: I give a fuck about your window. Like I worry about your fucking house when I drive past it. Now do me a favor and go sit down and shut up.*

*Michael: Obviously, you do.*

*Serpico: Yeah, because you live like a piece of shit. You're like a fucking hillbilly. You're like a hillbilly!*

*Michael: There's chairs outside. We're not bothering nobody [sic].*

*Serpico: Oh Mike, you're doing it on purpose, please. Trust me, you are.*

**77.** On belief, Serpico attempted to intimidate Michael into not making public comments.

### DEFENDANT SERPICO APOLOGIZES TO THE MEDIA; NOT TO PLAINTIFFS

**78.** On or about February 4, 2021, the audio of Defendant Serpico's meltdown went viral throughout local news outlets and social media.

---

[1] Shine is a derogatory word for an African American person that originates from the early 20th century stereotype that African Americans shined shoes for richer white people, or it is thought to be a derogatory reference to the color of an African American's skin tone. The words of Mayor Serpico sit against a backdrop of significant national turmoil over issues related to racial justice. The death of George Floyd in May 2020 sparked an outpouring of expressive actions by people across the country—millions of people gathered to mourn, protest, and advocate for racial equality; and to call attention to the systemic injustices that Black people and people of color face daily in America.

79. As Defendant Serpico's tirade circulated through the media, several people, including Plaintiffs, called for Serpico's resignation and questioned the motive behind issuing the VMP citations against them.

80. Defendant Serpico, through the VMP's public relations manager, claimed he made a "regretted making [the] comments" and falsely accused Michael of "repeatedly harass[ing] [him] and the Village Board of Trustees."

81. Michael has not repeatedly harassed him or the Village Board of Trustees.

82. It is unclear who Serpico apologized to as he has not apologized to any of the Plaintiffs for his egregious and arbitrary behavior.

83. On belief, Defendant VMP retaliated against Michael for asserting his constitutional rights, by issuing him several parking tickets for petty offenses including during times of unprecedented snow cover, *to wit*: expired municipal registration that expired four days earlier, not having a VMP vehicle tag, parking in an alley without the requisite 14-foot clearance, and street parking during the February snowstorms in areas that were not designated as a "no parking zone."

**DEFENDANT VMP CODE ENFORCEMENT COURT**

84. Residents who are issued citations by the VMP become subject to its municipal court system.

85. Once a month, the VMP holds an in-person hearing to allow residents to contest citations.

86. Defendant VMP does not offer residents the option to attend these hearings remotely.

87. The VMP allows other administrative hearings to proceed remotely (e.g., Electoral Board).

88. Requiring Vincent and Angeline to appear in person for these hearings would be contrary to the Governor's mandate to contest phony tickets that should have never been issued.

89. Specifically, the in-person appearance requirement is challenging for Vincent and Angeline as they are in ill-health and are at a heightened risk of developing fatal complications from contracting Covid-19.

### FEBRUARY 2, 2021 COURT HEARING

90. On or about January 7, 2021, Vincent and Angeline received a letter that the VMP sustained a slew of the citations issued against them and fined them $750. They were given notice to appear in person on February 2, 2021 for the prove-up proceedings.

91. Michael appeared at the hearing of February 2, 2021 and requested a continuance from the hearing officer.

92. The VMP, through its Hearing Officer, denied Michael's request for a continuance.

93. On February 2, 2021, Defendant VMP, through its Hearing Officer, entered a default judgment for the January 5, 2021 tickets and also for the additional 20 plus tickets that were heard for the first time without the VMP presenting any evidence or having a prove-up hearing.

94. When Michael objected to the hearing officer's determination, Campanelli and other VMP employees attempted to remove him from the proceeding.

95. Defendants have a financial interest in the citations that come before the municipal court because all the tickets issued to Vincent and Angeline were written by the same two VMP-hired code enforcement officers, were prosecuted by VMP-hired prosecutors, and Plaintiffs were found guilty by a VMP-hired hearing officer, all of which serve the VMP as the ultimate authority. *See Tumey v. Ohio* (1927) and *Ward v. Village of Monroeville* (1972).

96. On February 2, 2021, Michael filed a FOIA request for copies of the "anonymous complaints" that Sabatino's boss and other Village officials allegedly received in connection with his parent's property.

15

97. On February 3, 2021, the VMP responded to Michael's FOIA request that it had "no documents that were responsive."

98. On belief, various VMP employees or officials fabricated or exaggerated such complaints as pretext to issue Vincent and Angeline citations.

99. The day after the February 2, 2021 hearing, Defendant VMP informed Vincent and Angeline that it filed a $15,500.00 lien against their property as "final judgment" for the 31 tickets mentioned above.



100. On belief, the VMP's Code Enforcement proceedings are governed by § 65 ILCS 5/1-2.1-8, which provides that fines may be imposed as a lien upon real estate after failure to comply with an administrative order after a seven-day notice period for a hearing has been mailed/posted.

101. Plaintiffs never received an administrative order to remove the items from their front lawn.

102. Further, the VMP claims it issued the lien the next day, which was well before the seven-day notice period was up.

16

103. There is no rational basis for putting a lien on Vincent and Angeline's property the day after the hearing.

104. On belief, Defendant VMP put the lien on Vincent and Angeline's property in retaliation for Michael exposing Defendant Serpico's tirade.

<strong>DEFENDANT VMP'S SELECTIVE ENFORCEMENT</strong>

105. In every instance, the citation which Defendants imposed upon the Plaintiffs were arbitrary applications of the Code designed to target Plaintiffs.

106. The same rules were not applied to other residents in VMP.

107. Defendant VMP selectively enforced its municipal Code and policies against Plaintiffs based on assertions of their constitutional rights.

108. Several different VMP residents committed the same or similar types of purported code violations.

109. In support, the following photographs depict various Melrose Park residences with the same or worse types of purported "lawn clutter:"

    **a)** On February 21, 2021, there was a home with two mattresses thrown on its front lawn.



**b)** On July 5, 2020, a residence had several pieces of unbagged garbage in front of it



**c)** On September 2020, a resident attempted to sell his bike on the VMP-owned sidewalk.



**d)** On or about February 21, 2021, a Melrose Park homeowner displayed a 15-foot skeleton wearing a Santa hat and beard.



**e)** On or about January 19, 2021, a residence put out at least 12 bright red planters or garbage cans on its front porch.



**f)**  Several other Melrose Park homes have chairs and other lawn furniture in front of their private residences even during this winter, including:











\

**iv.** On or about February 21, 2021, at least two Melrose Park homes had a large front yard pergola





**v.** On or about August 2020, the Director of Code Enforcement's home with sandbags, garbage cans, and a fallen basketball net.





**vi.** On or about August 2020, the VMP's Human Resources Director constructed a pen-like structure in the front of her home and put a couch on her lawn.



**vii.** On February 21, 2021, a home had a trampoline and a slide in its front yard.



**g)** On or about January 19, 2021, another home still had their Christmas lights and decorations up. Their front yard also contained numerous planters, figurines of animals, and other choochkie's.



**h)** On or about February 21, 2021, a Melrose Park residence about two blocks from the Director of Code Enforcement's home still had several Christmas decorations on display including seven (7) reindeer and a sleigh on its front lawn.



**i)** On February 21, 2021, several homes still had Christmas decorations on display.





**j)** Parking Violations

    **i.** Illegally parked vehicles, as depicted below:



    **ii.** Vehicle blocking crosswalk and another vehicle holding the garage door up:



iii. Three cars parked in a municipal lot in clear violation of the "no parking anytime" signs.



## <u>COUNT I –CLASS OF ONE VIOLATION OF EQUAL PROTECTION</u>
(Plaintiffs v. All Defendants)

110. The Plaintiffs reallege each paragraph of this Complaint as if fully restated here.

111. Defendant VMP, through its employees and agents and at the behest of Defendant Serpico

intentionally targeted Plaintiffs for unequal treatment under the law, including that:

a) Defendants' agents issued Vincent and Angeline at least 53 bogus tickets, falsely accusing them of violating the VMP's ordinance against having "noxious refuse on property." In reality, Plaintiffs merely arranged outdoor plastic patio chairs in their front yard, put up a political flag and sign, and decorated their home for Christmas. The items in their front yard are designed for outdoor use and are not at risk of "decomposing" nor do they create a threat to public health. Defendants' conduct was a deliberate, arbitrary, capricious, and malicious attempt to financially cripple Plaintiffs and deprive them of their property under color of law. The Defendants did not attempt to issue such tickets to other residents for non-existent violations of law.

b) Defendants' agents issued tickets without citing which VMP ordinance was violated when it was violated or any details that would have allowed Plaintiffs to remedy the situation. This was a deliberate, arbitrary, capricious, and malicious attempt to financially cripple Plaintiffs and deprive them of their property under color of law. The Defendants did not attempt to issue such tickets to other residents for non-existent violations of law.

c) Defendants did not follow the Illinois Administrative Code when putting a lien on Vincent and Angeline's property.

**d)** Defendants issued parking tickets to Michael for petty infractions and alleged parking violations when there was deep snow cover, which reduced the available parking spots. This was a deliberate, arbitrary, capricious, and malicious attempt to inconvenience Michael. The Defendants did not attempt to issue such tickets to other residents for such other purported violations of law.

**e)** Said Defendants, acting under color of law, intimidated and coerced Plaintiffs to try to pummel them into submission or run them out of the VMP. The Defendants had no rational basis in law for taking these actions against the Plaintiffs.

112. VMP code enforcement officers arbitrarily applied express terms of the VMP Code to issue such citations.

113. The code enforcement and the police officers were motivated by Defendant Serpico's illegitimate animus against the Plaintiffs.

114. The VMP wrote over 53 tickets for having certain items on their front lawn when it allowed similar types of items to remain on the property of other similarly situated property owners.

115. Plaintiffs never had any legitimate violations. The Defendants or their agents concocted phony violations, contorted the ordinances to target Plaintiffs, vandalized Michael's property, and threatened Michael with bodily harm. These tactics were not used against any other law-abiding citizens in VMP. They were used selectively and with malicious intent to target Plaintiffs and run them out of town or financially cripple them.

116. Defendant VMP had no rational basis for treating Plaintiffs differently from other residents.

117. The actions of Defendant were intentional, willful, and malicious and/or in reckless disregard of Plaintiffs' rights as secured by 42 U.S.C. §1983 and the Civil Rights Act of 1991.

WHEREFORE, for the foregoing reasons, Plaintiff requests that this Court enter judgment in their favor and against Defendant VMP in an amount to be proved at trial, including for general compensatory, special, consequential damages, for emotional distress and reputational harm, for

attorneys' fees under 42 U.S.C. § 1988, and for all such other relief to which he is entitled and the Court deems just and proper.

**COUNT II – Denial of Due Process Under the Fourteenth Amendment**
(Vincent and Angeline v. All Defendants)

118.    The Plaintiffs reallege each paragraph of this Complaint as if fully restated here.

119.    The Due Process Clause prevents the government from declaring that Plaintiffs' lawful and harmless activities and conditions constitute nuisances when such activities and conditions are not nuisances, and any harm that could arise from such actions and conditions would be remote and highly speculative.

120.    Instead, the VMP treats these activities and conditions as nuisances and code violations to retaliate against certain citizens for asserting their protected conduct.

121.    Vincent and Angeline have property interests in their home.

122.    Vincent and Angeline's activities and conditions are not nuisances or violative of the Code. The Village cannot abate them or issue fines because they do not cause any harm to others or the Plaintiffs themselves.

123.    Vincent and Angeline were deprived, in whole or in part, of their property interests described above, under color of state law, in that they have over $26,000.00 in fines entered against them, and a lien of over $15,500.00 entered against their property, which will preclude it from being sold until paid.

124.    Vincent and Angeline were also deprived of their liberty interests in their good reputation in the community. Defendants repeatedly accused Vincent and Angeline of phony municipal violations and used the Village's police powers to cripple them financially by excessively fining them and encumbering their property.

125.    The VMP accomplished this deprivation by harassing and retaliating against Plaintiffs by:

27

    **a)**  Issuing phony municipal tickets, each carrying a $500 fine;

    **b)**  Failing to provide a method to abate the nuisance;

    **c)**  Failing to provide a legally sufficient description of the activity or conduct alleged to constitute a violation of the VMP Ordinances;

    **d)**  Failing to provide a written final order that included findings of law;

    **e)**  Failing to issue a determination based on the evidence presented at any of the hearings of whether a Code violation exists;

    **f)**  Failing to provide the name(s) of the alleged complaining witnesses who sent emails complaining about Plaintiffs' front lawn;

    **g)**  Failing to allow them to be heard before issuing default judgments against them;

    **h)**  Levying a lien against their property without the requisite prove-up hearing and without waiting for the requisite timeframe prescribed by statute.

**126.**    Defendants used the apparatus of the Village to violate Plaintiffs' property and liberty interests by making allegations of wrongdoing against Plaintiffs and their property, which Defendants knew at the time to be false, for the sole purpose of targeting and harassing Plaintiffs.

**127.**    As a direct and proximate result of the Defendants' actions, the named Plaintiffs have suffered and will continue to suffer irreparable injury to their constitutional rights.

**128.**    As a direct and proximate result of the Defendants' campaign to harass, retaliate, and punish Plaintiffs, they have been deprived of their due process rights as guaranteed under the Fourteenth Amendment of the United States Constitution.

WHEREFORE, Plaintiffs pray that judgment be entered in their favor and that this Court award compensatory damages from Defendants in an amount to be determined at trial for the matters

alleged in this Count; punitive damages to the extent provided for by law, and in an amount to be determined at trial; costs of suit incurred; reasonable attorney's fees; and provide such other and further relief as the Court may deem proper.

## COUNT III - 42 U.S.C. § 1983 DEPRIVATION OF FIRST AMENDMENT RIGHTS OF SPEECH AND EXPRESSION
(All Plaintiffs v. All Defendants)

**129.**     The Plaintiffs reallege each paragraph of this Complaint as if fully restated here.

**130.**     Plaintiffs' right to speak, write, and publish freely and petition the government is protected under Article 1, Section 4 of the United States Constitution, free from retaliation.

**131.**     As described more fully above and incorporated by reference herein, Plaintiffs engaged in extensive protected speech on matters of public concern, including, but not limited to:

    **a)**  Displaying a political sign and a political flag in front of their home;

    **b)**  Arranging their chairs in the front of their home;

    **c)**  Decorating the front of their home with Christmas decorations and lights; and

    **d)**  Petitioning the government and publicly posting his grievances against the VMP.

**132.**     As a result of the Plaintiffs' protected activities, Defendants retaliated against them in the manner described in the preceding paragraphs.

**133.**     Defendants intended by each of the actions described in the preceding paragraphs to punish and retaliate against Plaintiffs for exercising their First Amendment Rights and deterring them and others from exercising such rights in the future.

**134.**     Plaintiffs have suffered harm due to Defendants' actions and have been deprived of their rights secured under the First Amendment to the United States Constitution. This deprivation of Plaintiffs' constitutional rights is actionable pursuant to 42 U.S.C. § 1983.

135.    Defendants acts have caused Plaintiffs' damages such as stress, unlawful monetary judgments and liens, inconvenience, legal fees, future financial losses, and other compensatory and consequential damages.

WHEREFORE, for the preceding reasons, Plaintiffs request that this Court enter judgment in each of their favors and against each of the Defendants in an amount to be proved at trial, including compensatory, special, consequential damages, for non-economic emotional distress and reputational harms, for attorneys' fees under 42 U.S.C. § 1988, and for all such other relief to which Plaintiffs are entitled, and the Court deems just and proper.

### COUNT IV – 42 USC § 1983 Policy to Retaliate against Plaintiffs to Suppress their First Amendment Rights
(Plaintiffs v. VMP)

136.    The Plaintiffs reallege each paragraph of this Complaint as if fully restated here.

137.    Defendant Serpico, as the Mayor of the VMP, is a final policymaker.

138.    Defendant Serpico's duties as Mayor are executive, not legislative. He has no legal authority to make up laws on his own to promulgate municipal violations in VMP.

139.    Through its employees and agents and at the behest of Serpico, Defendant VMP retaliated against and targeted Plaintiffs by selectively enforcing ordinances against them, putting a lien on their property, and depriving them of their rights guaranteed under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 such as the freedom to express themselves, speak, and associate freely on matters of public concern, such as grieving government actions.

140.    The actions described above collectively show a pattern of ongoing harassment of Plaintiffs by local officials acting under color of law.

141.    At all times material to this Complaint, the VMP maintained

**a)** a policy, practice, or custom, sanctioned by Defendant Serpico, the Director of Code Enforcement, officers of the code enforcement division, officers of the police department, motivated by an improper animus of taking adverse action against Plaintiffs, including but not limited to municipal citations, parking tickets, vandalism, threats, and lien put on their property

**b)** a policy, practice, or custom of allowing and encouraging code enforcement officers and police officers issue bogus citations or tickets for petty reasons absent exigent circumstances to justify such citations; and/or of failing to provide its code enforcement officers adequate training to determine the presence or absence of exigent circumstances; and

**c)** a policy, practice, or custom of failing to properly train, supervise, discipline, transfer, monitor, counsel and otherwise control officers in its employ.

142. The policies, practices, and/or customs as set forth above were maintained by Defendant VMP with deliberate indifference towards Plaintiffs' constitutionally protected rights.

143. The aforementioned actions reflect an official policy, custom, or practice of penalizing residents and employees for discriminatory reasons and based on illegitimate animus in violation of the Fourteenth Amendment of the United States Constitution, and were committed, condoned, and perpetuated at the hands of policymakers and those to whom policy-making authority has been delegated. This makes the actions into official actions of the VMP, under *Monell*, for which the VMP should be held accountable as well.

144. As a result of employing the foregoing express acts espoused by VMP through Serpico, a final policymaker, to retaliate against Plaintiffs, Plaintiffs suffered harm including, without limitation, substantial loss of income, loss of enjoyment of life, and severe emotional distress.

WHEREFORE, Plaintiffs pray that this Court enter judgment against the Defendant VMP in an amount to be proved at trial, including compensatory, special, consequential damages, for non-economic emotional distress and reputational harms, for attorneys' fees under 42 U.S.C. § 1988, and for all such other relief to which Plaintiffs are entitled, and the Court deems just and proper.

### COUNT V – Indemnification
(Plaintiffs v. Defendant VMP)

**145.** The Plaintiffs reallege each paragraph of this Complaint as if fully restated here.

**146.** Defendant VMP is obligated to assume financial responsibility for the actions committed by its officials or employees, including Defendant Serpico.

WHEREFORE, for the foregoing reasons, Plaintiffs requests that this Court enter judgment in their favor, and against Defendant Village of Melrose, Park, Illinois, and enter an order requiring Defendant Village to indemnify the other Defendant in this matter.

### COMMON PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court grant the following relief:

**a)** Conduct a mediated settlement conference or refer the case to its court-annexed mediation program to assist the parties to bring about a settlement of this case;

**b)** Audit the Melrose Park Code Enforcement ticketing policies, housing code, and municipal court for its treatment of senior citizens and private nuisances;

**c)** Audit the Melrose Park Police Department's parking ticket policies;

**d)** Award Plaintiffs actual and compensatory damages to the extent permissible by law to compensate the Plaintiffs for injuries and losses caused by Defendants' conduct;

**e)** Award Plaintiffs prejudgment interest;

**f)** Award Plaintiffs reasonable attorneys' fees and costs;

**g)** All other relief as the interests of justice require.

## JURY DEMAND

**147.** Plaintiffs hereby demand a jury trial on all issues so triable.

Respectfully submitted,

Michael Cozzi, Vincent Cozzi, Angeline Cozzi

/s/ Gianna R. Scatchell
/s/ Cass T. Casper
/s/ Navarrio Wilkerson

By:_____

Gianna R. Scatchell, Esq.
DISPARTI LAW GROUP, P.A.
121 W. Wacker Drive, Suite 2300
Chicago, Illinois 60601
P: (312) 506-5511 ext. 330
F: (312) 846-6363
E: gia@dispartilaw.com

Cass T. Casper, Esq.
DISPARTI LAW GROUP, P.A.
121 W. Wacker Drive, Suite 2300
Chicago, Illinois 60601
P: (312) 506-5511 ext. 331
F: (312) 846-6363
E: ccasper@dispartilaw.com

Navarrio Wilkerson
DISPARTI LAW GROUP, P.A.
121 W. Wacker Drive, Suite 2300
Chicago, Illinois 60601
E: navarrio@dispartilaw.com

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the foregoing Complaint was filed on this Court's CM/ECF filing system on February 22, 2021 and that such counsels are all registered e-filers.

/s/ Gianna Scatchell

_____

One of Plaintiffs' Attorneys