## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| Michael Cozzi, Vincent Cozzi, and Angeline Cozzi, <br><br>    Plaintiffs, <br><br> v. <br> Village of Melrose Park, an Illinois Municipal Corporation, VMP Department of Administrative Hearings, VMP Dept. of Code Enforcement, and Ronald Serpico, in his individual capacity, <br><br>    Defendants. | Case No: 1:21-cv-00998 |

### DEFENDANT VILLAGE'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' FIRST AMENDED COMPLAINT

NOW COMES Defendant the VILLAGE OF MELROSE PARK, by and through its attorney Cynthia S. Grandfield of Del Galdo Law Group, LLC, and answers:

### INTRODUCTION

1.  Vincent and Angeline Cozzi are two Melrose Park octogenarian residents. They found themselves at the center of a coordinated campaign of harassment by certain VMP officials. Defendants issued Plaintiffs over 62 bogus tickets and numerous parking tickets in retaliation for asserting

certain constitutional rights. These tickets occurred on a near daily basis since December 2020. Plaintiffs now face thousands of dollars in fines including a property lien for $15,500.00. Plaintiff's son Michael has received threatening phone calls and his car was vandalized. The VMP has demonstrated no indication that it intends to halt its code enforcement against Plaintiffs.

**ANSWER: Defendant Village admits that Vincent and Angeline Cozzi are residents of the Village of Melrose Park, that they received tickets, that they were fined $15,500, and that there is a lien. Defendant Village denies each and every remaining allegation contained in Paragraph 1.**

2. Plaintiff brings this action to redress acts of equal protection (Class of One) violations pursuant to 42 USC § 1983 (Count I); Denial of Due Process Under the Fourteenth Amendment (Count II); 42 USC § 1983 Deprivation of First Amendment Rights of Speech and Expression (Count III), 42 USC § 1983 Policy to Retaliate against Plaintiffs to Suppress their First Amendment Rights (Count IV); and Indemnification (Count V).

**ANSWER: Defendant Village admits that the Plaintiffs bring these causes of actions but deny that any violation of law or rights has occurred.**

## JURISDICTION, VENUE, AND PARTIES

3. The Court has subject matter jurisdiction over this case under 28 USC § 1331 because this action presents federal questions and seeks to redress the deprivation of rights under the First and Fourteenth Amendments to the United States Constitution and pursuant to 42 U.S.C. § 1983.

**ANSWER:  Defendant admits to subject matter jurisdiction but denies that any deprivation of rights occurred.**

**4.**  Venue is proper in this District under 28 U.S.C. § 1391(e)(1) because the events giving rise to the claims took place in the Northern District of Illinois.

**ANSWER: Defendant Village admits that venue is proper.**

**5.**  Plaintiff Michael Cozzi is a resident of Melrose Park, Illinois.

**ANSWER:  Defendant admits the allegations contained in Paragraph 5.**

**6.**  Plaintiff Vincent Cozzi is an elderly resident of Melrose Park, Illinois.

**ANSWER:  Defendant admits the allegations contained in Paragraph 6.**

**7.**  Plaintiff Angeline Cozzi is an elderly resident of Melrose Park, Illinois.

**ANSWER:  Defendant admits the allegations contained in Paragraph 7.**

**8.**  Defendant Village of Melrose Park ("VMP") is a municipality incorporated under the State of Illinois laws. It funds both the Defendant Department of Code Enforcement and the municipal court system of the Village, the Department of Administrative Hearings.

**ANSWER:  Defendant Village admits the first sentence contained in Paragraph 8.  Defendant Village further admits that it has a Department of Code Enforcement and Department of Administrative Hearings.  Defendant Village denies each and every remaining allegation contained in Paragraph 8.**

**9.**  Defendant Ronald Serpico is an elected official who has served as the VMP mayor for over 20 years. Throughout his tenure, he has served on various local and state boards, including currently serving as a

commissioner for the Illinois Court of Claims. Defendant Serpico is also an attorney with a private practice within the VMP. Defendant Serpico is a final policymaker and serves as the president of the VMP. Defendant Serpico engaged in the conduct complained of while acting under the color of law. He is sued in his individual capacity.

**ANSWER:  Defendant Village admits that Ronald Serpico is the mayor and president of the Village, that he is elected to that position, and that he has held that position for over 20 years.  Defendant Village further admits that Serpico is an attorney with a private practice that is also currently serving as a commissioner for the Illinois Court of Claims.  Defendant Village denies each and every remaining allegation contained in Paragraph 9.**

## FACTUAL ALLEGATIONS

**10.** Plaintiffs Vincent and Angeline are lifelong Melrose Park residents who live with their son, Michael, who is also their caregiver.

**ANSWER:  Defendant admit that Vincent, Angeline and Michael Cozzi are Village residents and that they live together.  Defendant denies each and every remaining allegation contained in Paragraph 10.**

**11.** In 2019, when Vincent and Angeline moved into their new home, they put six outdoor plastic lawn chairs in their front yard, as depicted below.

**ANSWER:   Defendant Village admits that Vincent and Angeline moved to a different residence in the Village in 2019 and that plastic lawn chairs were placed in front of the residence at some point and time.  Defendant Village denies each and every remaining allegation contained in Paragraph 11.**



**12.** Vincent and Angeline would sit outside on their lawn chairs daily.

<u>**ANSWER:**</u>  **Defendant Village denies the allegations contained in Paragraph 12.**



**13.** The COVID-19 pandemic has amplified the importance of socially distant

forms of expression, making the right to have chairs on one's personal

property even more poignant. COVID-19 continues to impact the nation and has been especially impactful in Cook County. COVID-19 also has disproportionately impacted senior citizens.

**ANSWER: Defendant Village admits that COVID-19 continues to impact the nation and Cook County. Defendant Village denies each and every remaining allegation contained in Paragraph 13.**

14. Throughout the pandemic, Vincent and Angeline's lawn chairs have been the safest way to socially distance themselves from others without becoming socially isolated or exposed to Covid-19.

**ANSWER: Defendant Village denies the allegations contained in Paragraph 14.**

### DEFENDANTS' TARGETED HARASSMENT

15. Defendants allegedly took issue with the Plaintiffs' lawn furniture and later with Plaintiffs' flag, political sign, and religious decorations.

**ANSWER: Defendants deny the allegations contained in Paragraph 15.**

16. For example, on or about August 5, 2020, two VMP code enforcement officers, Anthony Sabatino ("Sabatino") and Phil Nocita ("Nocita") arrived at the Plaintiffs' residence, and Sabatino handed Michael two tickets and stated that these tickets "are from the Mayor, not us."

**ANSWER: Defendant Village admits that two tickets were issued by the Village in August of 2020. Defendant Village denies each and every remaining allegation contained in Paragraph 16.**

17. Defendant VMP cited Vincent for creating "nuisances" and for "unsanitary conditions."

**ANSWER:** **Defendant Village admits that it issued a citation for "unsanitary conditions" and for a "nuisance." Defendant Village denies each and every remaining allegation contained in Paragraph 17.**

**18.** The tickets did not explain how Vincent was creating unsanitary conditions or nuisances.

**ANSWER:** **Defendant Village denies the allegations contained in Paragraph 18.**

**19.** The total fine for the two tickets was $1,000.00.

**ANSWER:** **Defendant Village denies the allegations contained in Paragraph 19.**

**20.** Police Sergeant Rodriguez accompanied Sabatino and Nocita to serve these tickets in person.

**ANSWER:** **Defendant Village admits that Sergeant Rodriguez accompanied Sabatino for the service of one ticket on the Cozzi residence at some point. Defendant Village denies each and every remaining allegation contained in Paragraph 20.**

**21.** Police escorts are not the typical protocol for serving code enforcement violations.

**ANSWER:** **Defendant Village denies the allegation contained in Paragraph 21.**

7

**22.** Plaintiffs did not commit the violations listed on the tickets.

**ANSWER:  Defendant Village denies the allegation contained in Paragraph 22.**

**23.** Plaintiffs were not committing any crime, nor were they resisting arrest.

**ANSWER:  Defendant Village admits the allegations contained in Paragraph 23.**

### EFFORTS TO COMPLY WITH THE CODE ENFORCEMENT

**24.** Michael unsuccessfully tried to comply with code enforcement to stop the targeted violations.

**ANSWER: Defendant Village denies the allegations contained in Paragraph 24.**

**25.** Michael text messaged with Code Enforcement officer Bill Rich ("Rich") at least twice and even attempted to arrange a home visit.

**ANSWER: Defendant Village denies the allegations contained in Paragraph 25.**

**26.** Rich agreed to the home visit, but never showed up and then stopped responding to Michael.

**ANSWER:  Defendant Village denies the allegations contained in Paragraph 26.**

**27.** Michael also attempted to contact the VMP Director of Code Enforcement, Billy Campanelli ("Campanelli") to resolve the situation. Campanelli either blocked or ignored Michael's phone calls and text messages.

**ANSWER:  Defendant Village denies the allegations contained in Paragraph 27.**

**28.** Similarly, other VMP employees ignored Michael's attempts to discuss the situation.

**ANSWER:  Defendant Village denies the allegations contained in Paragraph 28.**

**29.** Another homeowner friend contacted Campanelli to resolve the situation, and Campanelli told him to "stay out of the Cozzi matter."

**ANSWER:  Defendant Village denies the allegations contained in Paragraph 29.**

## DEFENDANTS' HARASSMENT AND RETALIATION

**30.** Plaintiffs are on a fixed income and the volume and cost of these citations will financially cripple them.

**ANSWER:  Defendant Village lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 30.**

**31.** Faced with few options, Michael began to attend various public meetings in Melrose Park and post public Facebook videos and statements to bring attention to these grievances and criticize the VMP's treatment of his parents.

**ANSWER:  Defendant Village denies the allegations contained in Paragraph 31.**

**32.** In response to Plaintiffs' purported non-compliance and public grievances, Defendants began a targeted campaign to bully, harass, and retaliate against them for asserting their constitutional rights.

**ANSWER:  Defendant Village denies the allegations contained in Paragraph 32.**

**33.** The acts constituting harassment and retaliation by the Defendants include repeatedly issuing Plaintiffs tickets, ringing their doorbell to deliver tickets on Saturdays and Sundays, leaving warning notes, improperly surveilling and patrolling Plaintiffs' house, putting a lien on their property, and threatening Michael with physical violence.

**ANSWER:  Defendant Village denies the allegations contained in Paragraph 33.**

**34.** On or about December 1, 2020 Plaintiffs decorated their front yard for Christmas:



**ANSWER:  Defendant Village lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 34.**

**35.** On December 1, 2020, the same two code enforcement officers came to Plaintiffs' house and they told Michael to "put the clutter away" because their "boss" had received several anonymous emails complaining about the Plaintiffs' lawn chairs, political sign, political flag, and Christmas decorations.

**ANSWER: Defendant Village admits that code enforcement officers came to Plaintiffs' house and asked Michael to "put the clutter away" because the Village had received several anonymous complaints concerning lawn clutter. Defendant Village lacks sufficient knowledge or information to form a belief as to if this was on December 1, 2020. Defendant Village denies that the complaints were in the form of email, that they advised Michael that they received complaints about the Christmas decorations, the political sign, the political flag or that they asked him to remove the decorations, sign or flag. Defendant Village denies each and every remaining allegation contained in Paragraph 35.**

36. Michael informed code enforcement officers that the chairs allowed his elderly parents to have socially distanced company outside and that his parents used the chairs for additional support.

**ANSWER: Defendant Village denies the allegations contained in Paragraph 36.**

37. Sabatino acknowledged that he knew that Vincent and Angeline were elderly and in ill health by stating: "[y] ou've given me a reason [for having the chairs outside]."

**ANSWER: Defendant Village denies the allegations contained in Paragraph 37.**

38. The code enforcement officers left and did not issue Vincent or Angeline any citations.

**ANSWER: Defendant Village denies the allegations contained in Paragraph 38.**

39. On or about December 2, 2020, Michael received a "warning" letter on his car windshield from a police officer admitting that, "I was **told** that if I see your car parked on 15th [ave] in violation  [sic] to issue [you] a ticket . . . and that **the other shifts were advised about this situation.**"(*emphasis added*)



**ANSWER:  Defendant Village admits that this letter was written by Officer Verde and left on Plaintiff Michael Cozzi's car.  Defendant Village lacks knowledge or information sufficient to form a belief as to the truth of the allegation as to what date this occurred. Defendant Village denies each and every remaining allegation contained in Paragraph 39.**

40. The fact that Melrose Park police officers now required direction to perform a primary function of their position as traffic enforcement suggests that

Defendants conspired and selectively applied and enforced its traffic ordinances against Michael.

**ANSWER: Defendant Village denies the allegations contained in Paragraph 40.**

41. From December 3, 2020 to February 18, 2021, Defendant VMP issued Vincent and Angeline at least 62 more $500 per offense municipal code citations for alleged "nuisances" and "front law clutter" all purporting to be in violation of VMP Code § 8.048.050.

**ANSWER: Defendant Village admits that it issued citations from December to February of 2021 for "nuisances" and "front lawn clutter." Defendant Village denies each and every remaining allegation contained in Paragraph 41.**

42. VMP Code § 8.48.050 governs "Noxious refuse on property," and states in relevant part:

No part or the contents of, or substance from any sink, privy or cesspool, nor any manure, ashes, garbage, offal, rubbish, dirt, junk, nor any refuse or waste or thing which by its decomposition could, or would become offensive to human beings or detrimental to health, or tend to injure the character of the property in the vicinity thereof, or create or tend to create a nuisance, shall be by any person thrown, deposited or placed upon any property within the Village, whether such property is enclosed or otherwise, without the written permission of the board.

**ANSWER: Defendant Village admits that this is what Section 8.48.050 of the Village Code states. Defendant Village denies each and every remaining allegation contained in Paragraph 42.**

| | B | C | D | E | F | G | J |
|---|---|---|---|---|---|---|---|
| 1 | Day of Week | Day | Name | Offense Committed | Ordinance Violated | Ticket # | Fee |
| 2 | Weds. | 8/5/2020 10:00am | Vincent Cozzi | Unsanitary Conditions | Ch. PM § 302 of its Local Ord .1 | 3514 | $500.00 |
| 3 | Weds. | 8/5/2020 10:30am | Vincent Cozzi | Nuisances | Chapter PM | 3516 | $500.00 |
| 4 | Thurs. | 12/3/2020 10:00am | Vincent & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4321 | $500.00 |
| 5 | Mon. | 12/7/2020 9:00am | Vincent & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4324 | $500.00 |
| 6 | Tues. | 12/8/2020 9:30am | Vincent & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4451 | $500.00 |
| 7 | Weds. | 12/9/2020 10:00am | Vincent & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4452 | $500.00 |
| 8 | Thurs. | 12/10/2020 10:30am | Vincent & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4453 | $500.00 |
| 9 | Fri. | 12/11/2020 11:00am | Vincent & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4454 | $500... |
| 11 | Mon. | 12/14/2020 9:00am | Vincent & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4457 | $500.00 |
| 11 | Tues. | 12/15/2020 9:30am | Vincent & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4458 | $500.00 |
| 12 | Weds. | 12/16/2020 10:00am | Vincent & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4459 | $500.00 |
| 13 | Thurs. | 12/17/2020 10:30am | Vincent & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4460 | $500.0^ |
| 14 | Fri. | 12/18/2020 11:00am | Vincent & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4461 | $500.00 |
| 15 | Mon. | 12/21/2020 9:30am | Vincent & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4465 | $500.0^ |
| 16 | Tues. | 12/22/2020 10:00am | Vincent & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4466 | $500.00 |
| 17 | Weds. | 12/23/2020 10:30am | Vincent & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4467 | $500.00 |
| 18 | Thurs. | 12/24/2020 11:00am | Vincent & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4468 | $500.00 |
| 19 | Mon. | 12/28/2020 9:00am | Vincente & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4473 | $500.00 |
| 20 | Tues. | 12/29/2020 10:00am | Vincent & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4474 | $500.00 |
| 21 | Weds. | 12/30/2020 10:30am | Vincente & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | None Listed | 4551 | $500.00 |
| 22 | Thurs. | 12/31/2020 11:00am | Vincente & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | None Listed | 4552 | $500.00 |
| 23 | Mon. | 1/4/2021 9:00am | Vincente & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4563 | $500.00 |
| 24 | Tues. | 1/5/2021 10:00am | Vincent & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4566 | $500.00 |
| 25 | Weds. | 1/6/2021 10:30am | Vincente & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4567 | $500.00 |
| 26 | Thurs. | 1/7/2021 11:00am | Vincente & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4572 | $500.00 |
| 27 | Fri. | 1/8/2021 11:30am | Vincente & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | None Listed | 4573 | $500.00 |
| 28 | Mon. | 1/11/2021 12:00pm | Vincente & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4353 | $500.00 |
| 29 | Tues. | 1/12/2021 12:30pm | Vincente & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4357 | $500.00 |
| 30 | Weds. | 1/13/2021 1:00pm | Vincente & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4362 | $500.00 |
| 31 | Thurs. | 1/14/2021 2:00pm | Vincente & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4363 | $500.00 |
| 32 | Fri. | 1/15/2021 3:00pm | Vincente & Angeline Cozzi/ Trust Number 8002361068 Or Owner of Record | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4367 | $500.00 |
| 33 | Tues. | 1/19/2021 9:30am | Vincente & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4370 | $500.00 |
| 34 | Weds. | 1/20/2021 10:00am | Vincente & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4373 | $500.00 |
| 35 | Thurs. | 1/21/2021 10:30am | Vincente & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4576 | $500.00 |
| 36 | Fri. | 1/22/2021 11:00am | Vincente & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4581 | $500.00 |
| 37 | Mon. | 1/25/2021 12:00pm | Vincente & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4584 | $500.00 |
| 38 | Tues. | 1/26/2021 1:00pm | Vincente & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4587 | $500.00 |
| 39 | Weds. | 1/27/2021 2:00pm | Vincente & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4593 | $500.00 |
| 40 | Thurs. | 1/28/2021 3:00pm | Vincente & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4596 | $500.00 |
| 41 | Mon. | 2/1/2021 9:00am | Vincente & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4627 | $500.00 |
| 42 | Tues. | 2/2/2021 10:00am | Vincente & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | None Listed | 4630 | $500.00 |
| 43 | Weds. | 2/3/2021 9:30am | Vincente & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4633 | $500.00 |
| 44 | Thurs. | 2/4/2021 10:00am | Vincente & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4636 | $500.00 |
| 45 | Fri. | 2/5/2021 10:30am | Vincente & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4637 | $500.00 |
| 46 | Mon. | 2/8/2021 11:00am | Vincente & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4638 | $500.00 |
| 47 | Tues. | 2/9/2021 12:00pm | Vincente & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4639 | $500.00 |
| 48 | Weds. | 2/10/2021 12:30pm | Vincente & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4640 | $500.00 |
| 49 | Thurs. | 2/11/2021 1:00pm | Vincente & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4641 | $500.00 |
| 50 | Fri. | 2/12/2021 2:30pm | Vincent & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4644 | $500.00 |
| 51 | Tues. | 2/16/2021 3:00pm | Vincent & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4645 | $500.00 |
| 52 | Weds. | 2/17/2021 3:30pm | Vincent & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4647 | $500.00 |
| 53 | Thurs. | 2/18/2021 4:00pm | Vincent & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4476 | $500.00 |
| 54 | Fri. | 2/19/2021 4:30pm | Vincent & Angeline Cozzi or Trust Number 8002361068 | Creating a nuisance, clutter on the front lawn. | 8.48.050 | 4478 | $500.00 |
| 55 | Mon. | 2/22/2021 9:00am | Vincent & Angeline Cozzi or Trust Number 8002361068 | Creating a nuisance, clutter on the front lawn. | 8.48.050 | 4479 | $500.00 |
| 56 | Tues. | 2/23/2021 9:30am | Vincent & Angeline Cozzi or Trust Number 8002361068 | Creating a nuisance, clutter on the front lawn. | 8.48.050 | 4480 | $500.00 |
| 57 | Weds. | 2/24/2021 10:00am | Vincent & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4481 | $500.00 |
| 58 | Thurs. | 2/25/2021 10:30am | Vincent & Angeline Cozzi or Trust Number 8002361068 | Creating a Nuisance, Cluttering the Front Lawn | 8.48.050 | 4483 | $500.00 |
| 59 | Fri. | 2/26/2021 11:00am | Vincent & Angeline Cozzi or Trust Number 8002361068 | Creating a nuisance, clutter on the front lawn. | 8.48.050 | 4484 | $500.00 |
| 60 | Weds. | 3/3/2021 11:30am | Vincent & Angeline Cozzi/ or Trust Number 8002361068 | Creating a nuisance, clutter on the front lawn. | 8.48.050 | 4485 | $500.00 |
| 61 | | | | | | Total Fines = | $29,500.00 |

**43.** For example, in December, the VMP issued Vincent and Angeline $500

tickets on      December 3, 2020; December 5, 2020; December 7 - 8, 2020;

December 9 – 11, 2020; December 14 – 18, 2020; December 22 – 24, 2020; and

December 28 – 31, 2020.

**ANSWER:  Defendant Village admits that it issued citations on these dates in December, with the exception of the 5th.   Defendant Village denies each and every remaining allegation contained in Paragraph 43.**

**44.** Defendants even wrote Plaintiffs a ticket on Christmas Eve for their

Christmas decorations and      lights, which the code enforcement officers

callously labeled "nuisance" and "clutter."

**ANSWER:  Defendant Village denies the allegations contained in Paragraph 44.**

**45.** Similarly, in January, the VMP issued Vincent and Angeline $500 tickets

on January 4 – 8, 2021; January 11-15, 2021; January 19 – January 22, 2021;

January 25 – 28, 2021.

**ANSWER:  Defendant Village admits that it issued citations on these dates in January.  Defendant Village denies each and every remaining allegation contained in Paragraph 45.**

**46.** In February, the VMP issued Vincent and Angeline $500 tickets on

February 1-5, 2021, and February 8-12, 2021, February 16-19, 2021, and

February 22-26, 2021.

**ANSWER:  Defendant Village admits that it issued citations on these dates in February.   Defendant Village denies each and every remaining allegation contained in Paragraph 46.**

**47.** The citations seek enforcement of the ordinance by forcing Vincent and Angeline to pay fines of over $29,655.00.

**ANSWER:** **Defendant Village denies the allegations contained in Paragraph 47.**

### THE TROUBLING PATTERN OF TARGETED HARASSMENT REVEALED

**48.** The same code enforcement officers wrote nearly every ticket issued to Vincent and Angeline.

**ANSWER:** **Defendant Village admits that some code enforcement officers wrote multiple tickets for the property. Defendant Village denies each and every remaining allegation contained in Paragraph 48.**

**49.** Each citation contains the same purportedly violative conduct, which is broadly stated as: "Creating a Nuisance, Cluttering the Front Lawn."

**ANSWER:** **Defendant Village admits that the citations referenced "creating a nuisance," "clutter," and the "front lawn." Defendant Village denies each and every remaining citation contained in Paragraph 49.**

**50.** Vincent and Angeline were cited for inapplicable parts of the Code:

    **a)** The term "noxious" is not defined in the VMP Code, but according to Webster's Dictionary, the term means "harmful or injurious to health or physical well-being."

    **b)** Plaintiffs' front lawn items consist of plastic outdoor lawn chairs, a flag, and Christmas decorations, none of which pose a risk of decomposition or threat to public health. Plaintiffs do not maintain

a cesspool, manure, garbage, junk, or anything that could decompose.

**c)** Ordinance §8.048.050 requires "written board permission" before being allowed to have "noxious refuse" on property.

**d)** Ordinance §8.048.050 does not list a penalty for violating it.

**e)** Defendant VMP does not have an ordinance prohibiting homeowners from putting lawn furniture, decorations, political signs, or religious items in their front yards.

**f)** On further belief, Defendant VMP does not have an ordinance requiring homeowners to remove holiday decorations by a specific date.

**ANSWER: Defendant Village denies the allegations contained in Paragraph 50.**

51. VMP's tickets do not inform Vincent or Angeline what items constitute a nuisance.

**ANSWER: Defendant Village denies the allegations contained in Paragraph 51.**

52. The VMP has not offered a solution to mitigate or remedy against the daily fines, such as abatement proceedings or ordering the removal of items from their front lawn.

**ANSWER: Defendant Village denies the allegations contained in Paragraph 52.**

53. The December 31, 2020, January 8, 2021, and February 1, 2021 citations do not specify which specific part of the Code that Plaintiffs have violated.

**ANSWER:** **Defendant Village admits that the December 31, 2020 and January 8, 2021 citations do not have a reference to a specific Village Code section. Defendant Village denies each and every remaining allegation contained in Paragraph 53.**

**54.** The February 2, 2021 ticket does not specify how much the fine is.

**ANSWER:** **Defendant Village denies the allegations contained in Paragraph 54.**

**55.** Many tickets issued to Vincent and Angeline have sequential dates and citation numbers, suggesting that they were the only recipients of such violations on several dates.

| Tues. | 12/8/2020 9:30am | 4451 |
|---|---|---|
| Weds. | 12/9/2020 10:00am | 4452 |
| Thurs. | 12/10/2020 10:30am | 4453 |
| Fri. | 12/11/2020 11:00am | 4454 |
| Mon. | 12/14/2020 9:00am | 4457 |
| Tues. | 12/15/2020 9:30am | 4458 |
| Weds. | 12/16/2020 10:00am | 4459 |
| Thurs. | 12/17/2020 10:30am | 4460 |
| Fri. | 12/18/2020 11:00am | 4461 |
| Mon. | 12/21/2020 9:30am | 4465 |
| Tues. | 12/22/2020 10:00am | 4466 |
| Weds. | 12/23/2020 10:30am | 4467 |
| Thurs. | 12/24/2020 11:00am | 4468 |
| Mon. | 12/28/2020 9:00am | 4473 |
| Tues. | 12/29/2020 10:00am | 4474 |
| Weds. | 12/30/2020 10:30am | 4551 |
| Thurs. | 12/31/2020 11:00am | 4552 |
| Thurs. | 1/7/2021 11:00am | 4572 |
| Fri. | 1/8/2021 11:30am | 4573 |

**ANSWER:** **Defendant Village admits that citations were issued on the dates and times listed and that the listed citation numbers are correct. Defendant Village denies each and every remaining allegation contained in Paragraph 55.**

**56.** The citations also reveal a puzzling pattern where the time of the alleged violation is precisely 30 minutes or one hour after the previous day's citation, as depicted in the table below:

| | Day of Week | Date | Time | Ticket # |
|---|---|---|---|---|
| 9 | Tues. | 12/8/2020 | 9:30 AM | 4451 |
| 10 | Weds. | 12/9/2020 | 10:00 AM | 4452 |
| 11 | Thurs. | 12/10/2020 | 10:30 AM | 4453 |
| 12 | Fri. | 12/11/2020 | 11:00 AM | 4454 |
| 13 | Mon. | 12/14/2020 | 9:00 AM | 4457 |
| 14 | Tues. | 12/15/2020 | 9:30 AM | 4458 |
| 15 | Weds. | 12/16/2020 | 10:00 AM | 4459 |
| 16 | Thurs. | 12/17/2020 | 10:30 AM | 4460 |
| 17 | Fri. | 12/18/2020 | 11:00 AM | 4461 |
| 18 | Mon. | 12/21/2020 | 9:30 AM | 4465 |
| 19 | Tues. | 12/22/2020 | 10:00 AM | 4466 |
| 20 | Weds. | 12/23/2020 | 10:30 AM | 4467 |
| 21 | Thurs. | 12/24/2020 | 11:00 AM | 4468 |
| 22 | Mon. | 12/28/2020 | 9:00 AM | 4473 |
| 23 | Tues. | 12/29/2020 | 10:00 AM | 4474 |
| 24 | Weds. | 12/30/2020 | 10:30 AM | 4551 |
| 25 | Thurs. | 12/31/2020 | 11:00 AM | 4552 |
| 26 | Mon. | 1/4/2021 | 9:00 AM | 4563 |
| 27 | Tues. | 1/5/2021 | 10:00 AM | 4566 |
| 28 | Weds. | 1/6/2021 | 10:30 AM | 4567 |
| 29 | Thurs. | 1/7/2021 | 11:00 AM | 4572 |
| 30 | Fri. | 1/8/2021 | 11:30 AM | 4573 |
| 31 | Mon. | 1/11/2021 | 12:00 PM | 4353 |
| 32 | Tues. | 1/12/2021 | 12:30 PM | 4357 |
| 33 | Weds. | 1/13/2021 | 1:00 PM | 4362 |
| 34 | Thurs. | 1/14/2021 | 2:00 PM | 4363 |
| 35 | Fri. | 1/15/2021 | 3:00 PM | 4367 |
| 36 | Tues. | 1/19/2021 | 9:30 AM | 4370 |
| 37 | Weds. | 1/20/2021 | 10:00 AM | 4373 |
| 38 | Thurs. | 1/21/2021 | 10:30 AM | 4576 |
| 39 | Fri. | 1/22/2021 | 11:00 AM | 4581 |
| 40 | Mon. | 1/25/2021 | 12:00 PM | 4584 |
| 41 | Tues. | 1/26/2021 | 1:00 PM | 4587 |
| 42 | Weds. | 1/27/2021 | 2:00 PM | 4593 |
| 43 | Thurs. | 1/28/2021 | 3:00 PM | 4596 |
| 44 | Mon. | 2/1/2021 | 9:00 AM | 4627 |
| 45 | Tues. | 2/2/2021 | 10:00 AM | 4630 |
| 46 | Fri. | 2/5/2021 | 11:30 AM | 4637 |

**ANSWER:  Defendant Village admits that citations were issued in January and February of 2021 on the dates listed, at the times listed, and the citation number listed.  Defendant Village denies each and every remaining allegation contained in Paragraph 56.**

57. After Michael posted a video of the code enforcement officers coming to his

parent's home, the VMP began sending Plaintiffs the tickets via mail.

**ANSWER:   Defendant Village denies the allegations contained in Paragraph 57.**

**58.** Vincent and Angeline's home is in a trust, and the VMP has been mailing the tickets to their home address without notifying the Trustee, which is not proper notice.

**ANSWER: Defendant Village denies the allegations contained in Paragraph 58.**

**59.** Because the Trustee of the property was not given notice of the proceedings, it did not have legal representation at the hearing

**ANSWER: Defendant Village denies the allegations contained in Paragraph 59.**

**60.** The fact that Vincent and Angeline Cozzi are the purported beneficiaries of the property is of no consequence.

**ANSWER: Defendant Village denies the allegations contained in Paragraph 60.**

**61.** Issuing the tickets by mail further violates Vincent and Angeline's rights because the alleged violations continue to accrue for days before they even realize that they have incurred more hefty fines for the alleged continuing violations.

**ANSWER: Defendant Village denies the allegations contained in Paragraph 61.**

**THREATS AGAINST MICHAEL ESCALATE**

**62.** The VMP, through its code enforcement division, police department, and individual employees embarked on a campaign of harassment and retaliation against Michael as punishment for exercising his right of free

speech and right to petition the government for redress of grievances and

to try to deter him from exercising such rights in the future.

**ANSWER:** **Defendant Village denies the allegations contained in Paragraph 62.**

## SERPICO VERBALLY ASSAULTS MICHAEL

**63.** Code enforcement officers, Defendant Serpico, and police officers drive past

the Plaintiffs' home daily, sometimes several times each day.

**ANSWER:** **Defendant Village denies the allegations contained in Paragraph 63.**

**64.** In one instance, a police officer harassed a person visiting Plaintiffs' home

by pulling up behind his car, activating the lights, and inched closer to the

vehicle until he drove away.

**ANSWER:** **Defendant Village denies the allegations contained in Paragraph 64.**

**65.** In another instance, on December 7, 2020, Defendant Serpico drove past

Plaintiffs' house.

**ANSWER:** **Defendant Village admits that Mayor Serpico has driven by Plaintiffs' house before. Defendant Village denies each and every remaining allegation contained in Paragraph 65.**

**66.** When he saw Michael outside, Serpico slowed down his vehicle and rolled

down the window.

**ANSWER:** **Defendant Village denies the allegations contained in Paragraph 66.**

**67.** Michael and Serpico exchanged words, which ended with Serpico telling

Michael

*"You're lucky I don't get out of this car and beat your ass."*

**ANSWER: Defendant Village admits that Mayor Serpico has spoken to Michael Cozzi while Cozzi was on the corner of 15th Avenue. Defendant Village denies each and every remaining allegation contained in Paragraph 67.**

68. On belief, Defendant Serpico came by Plaintiffs' home with the intent of

harassing Michael and trying to provoke a physical altercation.

**ANSWER: Defendant Village denies the allegations contained in Paragraph 68.**

69. Serpico did not exit his vehicle and drove away.

**ANSWER: Defendant Village denies the allegations contained in Paragraph 69.**

70. On or about December 18, 2020, someone broke Michael's car window.

**ANSWER: Defendant Village lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 70.**

### MICHAEL RECEIVES DEATH THREATS

71. On or about December 20, 2020, Michael received the following threatening

text message from an unknown phone number, which is (312) 480-8765:

*"Wait till I see you. I'm splitting your curly wig, you dead beat Cunt. This is my neighborhood; you best get the fuck out before we make you get out."*

**ANSWER: Defendant Village lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 71.**

72. Later on, Michael received the following death threat from a restricted phone number:

*"Listen, you sheep head motherfucker. I'm going to put a piece in the back of your motherfucking skull. I'm going to fuck your mother and your father.*

*Get the fuck out of Melrose Park before you catch a fucking beating. Do you understand me, you fucking cunt motherfucker?*

*Do you have any idea who the fuck you're fucking with?*

*You'll be dead, you motherfucker. I'm telling you one time. Last fucking time I'm going to call you, you piece of shit cunt motherfucker."*

**ANSWER:** **Defendant Village lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 72.**

73. On belief, the individual(s) responsible for these unknown threats and vandalism are working with or at the direction of Defendants.

**ANSWER:** **Defendant Village denies the allegations contained in Paragraph 73.**

### JANUARY 2021 VILLAGE OF MELROSE PARK ELECTORAL MEETING

74. Michael attended a January 2021 VMP meeting that Defendant Serpico presided over.

**ANSWER:** **Defendant Village denies the allegations contained in Paragraph 74.**

75. While at the meeting, Michael approached the podium and attempted to discuss the barrage of tickets that his parents had been issued with Defendant Serpico.

**ANSWER:** **Defendant Village denies the allegations contained in Paragraph 75.**

76. Public commentary is allowed at an open government meeting.

**ANSWER:** **Defendant Village admits that the Illinois Open Meetings Act requires an opportunity for public comment during a meeting that is subject to the Act within the limitations identified in 5 ILCS**

**120/2.06(g).    Defendant Village denies each and every remaining allegation contained in Paragraph 76.**

**77.** However, Defendant Serpico did not allow Michael to ask any questions or give commentary.

**ANSWER:   Defendant Village denies the allegations contained in Paragraph 77.**

**78.** Defendant Serpico, instead, began a profanity-laden and racial tirade where he berated Michael as summarized below:

***Serpico:*** *Let me tell you something, you're lucky . . . I'm going to tell you something, you're really reaching me. So, do me a fucking favor and sit down and shut the fuck up. How's that?*

*You little fucking prick. Go on, shake your fucking head. You're nothing but a fucking punk.*

***Michael:*** *Why?*

***Serpico:*** *Because you're a jag off!*

***Michael:*** *What did I do to you?*

***Serpico:*** *YOU'RE A JAG OFF! You look like a fucking shine on 15th [ave] because you're doing it to bust fucking balls. That's what you're doing. So, go fuck yourself! GO FUCK YOURSELF!*

***Michael:*** *You guys are busting my balls. Did you know my window got broken?*

***Serpico:*** *I give a fuck about your window. Like I worry about your fucking house when I drive past it. Now do me a favor and go sit down and shut up.*

***Michael:*** *Obviously, you do.*

***Serpico:*** *Yeah, because you live like a piece of shit. You're like a fucking hillbilly. You're like a hillbilly!*

**Michael:** *There's chairs outside. We're not bothering nobody [sic].*

**Serpico:** *Oh Mike, you're doing it on purpose, please. Trust me, you are.*

**ANSWER:** **Defendant Village admits that these are a portion of the comments made by Mayor Serpico at some point in 2021. Defendant Village denies that this occurred during public comment or during a meeting and each and every remaining allegation contained in Paragraph 78.**

79. On belief, Serpico attempted to intimidate Michael into not making public comments.

**ANSWER:** **Defendant Village denies the allegations contained in Paragraph 79.**

## DEFENDANT SERPICO APOLOGIZES TO THE MEDIA; NOT TO PLAINTIFFS

80. On or about February 4, 2021, the audio of Defendant Serpico's meltdown went viral throughout local news outlets and social media.

**ANSWER:** **Defendant Village admits that audio and video of Mayor Serpico was published by various media outlets on February 4, 2021. Defendant Village denies each and every remaining allegation contained in Paragraph 80.**

81. As Defendant Serpico's tirade circulated through the media, several people, including Plaintiffs, called for Serpico's resignation and questioned the motive behind issuing the VMP citations against them.

**ANSWER:** **Defendant Village admits that Plaintiff Michael Cozzi said that the Mayor should resign. Defendant Village denies each and every remaining allegation contained in Paragraph 81.**

**82.** Defendant Serpico, through the VMP's public relations manager, claimed he "regretted making [the] comments" and falsely accused Michael of "repeatedly harass[ing] [him] and the Village Board of Trustees."

**ANSWER:** **Defendant Village denies the allegations contained in Paragraph 82.**

**83.** Michael has not repeatedly harassed him or the Village Board of Trustees.

**ANSWER:** **Defendant Village denies the allegations contained in Paragraph 83.**

**84.** It is unclear who Serpico apologized to as he has not apologized to any of the Plaintiffs for his egregious and arbitrary behavior.

**ANSWER:** **Defendant Village denies the allegations contained in Paragraph 84.**

**85.** On belief, Defendant VMP retaliated against Michael for asserting his constitutional rights, by issuing him several parking tickets for petty offenses including during times of unprecedented snow cover, *to wit*: expired municipal registration that expired four days earlier, not having a VMP vehicle tag, parking in an alley without the requisite 14-foot clearance, and street parking during the February snowstorms in areas that were not designated as a "no parking zone."

**ANSWER:** **Defendant Village denies the allegations contained in Paragraph 85.**

### DEFENDANT VMP CODE ENFORCEMENT COURT

**86.** Residents who are issued citations by the VMP become subject to its municipal court system.

**ANSWER:  Defendant Village admits that residents who receive code enforcement citations may have those citations adjudicated under the Village's administrative adjudication system.  Defendant Village denies each and every remaining allegation contained in Paragraph 86.**

87. Once a month, the VMP holds an in-person hearing to allow residents to

contest citations.

**ANSWER:  Defendant Village admits that it holds in-person hearings regarding citations.  Defendant Village denies each and every remaining allegation contained in Paragraph 87.**

88. Defendant VMP does not offer residents the option to attend these hearings

remotely.

**ANSWER:  Defendant Village admits the allegations contained in Paragraph 88.**

89. The VMP allows other administrative hearings to proceed remotely (e.g.,

Electoral Board).

**ANSWER:  Defendant Village admits that the Village Electoral Board had a remote option during the pandemic.  Defendant Village denies each and every remaining allegation contained in Paragraph 89.**

90. Requiring Vincent and Angeline to appear in person for these hearings

would be contrary to the Governor's mandate to contest phony tickets that

should have never been issued.

**ANSWER:  Defendant Village denies the allegations contained in Paragraph 90.**

**91.** Specifically, the in-person appearance requirement poses a health risk for Vincent and Angeline as they are in ill-health and are at a heightened risk of developing fatal complications from contracting Covid-19.

**ANSWER:** **Defendant Village denies the allegations contained in Paragraph 91.**

## FEBRUARY 2, 2021 COURT HEARING

**92.** On or about January 7, 2021, Vincent and Angeline received a letter that the VMP sustained a slew of the citations issued against them and fined them $750. They were given notice to appear in person on February 2, 2021 for the prove-up proceedings.

**ANSWER:** **Defendant Village admits that the Village sent them a letter in January of 2021 regarding citations issued against them and that they were given notice to appear at a February 2, 2021 hearing. Defendant Village denies each and every remaining allegation contained in Paragraph 92.**

**93.** Michael appeared at the hearing of February 2, 2021 and requested a continuance from the hearing officer.

**ANSWER:** **Defendant Village admits that Michael Cozzi appeared at the February 2, 2021 hearing and that Michael Cozzi requested a continuance after he indicated that he was not going to remove the items and that he had no intention of complying. Defendant Village denies each and every remaining allegation contained in Paragraph 93.**

**94.** The VMP, through its Hearing Officer, denied Michael's request for a continuance.

**ANSWER:** **Defendant Village admits the allegations contained in Paragraph 94.**

**95.** On February 2, 2021, Defendant VMP, through its Hearing Officer, entered a default judgment for the January 5, 2021 tickets and also for the additional 20 plus tickets that were heard for the first time without the VMP presenting any evidence or having a prove-up hearing.

**ANSWER: Defendant Village admits that a judgment was entered on several tickets on February 2, 2021. Defendant Village denies each and every remaining allegation contained in Paragraph 95.**

**96.** When Michael objected to the hearing officer's determination, Campanelli and other VMP employees attempted to remove him from the proceeding.

**ANSWER: Defendant Village denies the allegations contained in Paragraph 96.**

**97.** Defendants have a financial interest in the citations that come before the municipal court because all the tickets issued to Vincent and Angeline were written by the same two VMP-hired code enforcement officers, were prosecuted by VMP-hired prosecutors, and Plaintiffs were found guilty by a VMP-hired hearing officer, all of which serve the VMP as the ultimate authority. *See Tumey v. Ohio* (1927) and *Ward v. Village of Monroeville* (1972).

**ANSWER: Defendant Village denies the allegations contained in Paragraph 97.**

**98.** On February 2, 2021, Michael filed a FOIA request for copies of the "anonymous complaints" that Sabatino's boss and other Village officials allegedly received in connection with his parent's property.

**ANSWER: Defendant Village admits that Michael made a FOIA request on February 2, 2021. Defendant Village denies each and every remaining allegation contained in Paragraph 98.**

99. On February 3, 2021, the VMP responded to Michael's FOIA request that it had "no documents that were responsive."

**ANSWER: Defendant Village admits the allegations contained in Paragraph 99.**

100. On belief, various VMP employees or officials fabricated or exaggerated such complaints as pretext to issue Vincent and Angeline citations.

**ANSWER: Defendant Village denies the allegations contained in Paragraph 100.**

101. The day after the February 2, 2021 hearing, Defendant VMP informed Vincent and Angeline that it filed a $15,500.00 lien against their property as "final judgment" for the 31 tickets mentioned above.

**ANSWER: Defendant Village admits that the property was assessed $15,500 in total fines for 31 tickets. Defendant Village denies each and every remaining allegation contained in Paragraph 101.**



102. On belief, the VMP's Code Enforcement proceedings are governed by §
65 ILCS 5/1-2.18, which provides that fines may be imposed as a lien
upon real estate after failure to comply with an administrative order
after a seven-day notice period for a hearing has been mailed/posted.

**ANSWER:  Defendant Village denies the allegations contained in
Paragraph 102.**

103. Plaintiffs never received an administrative order to remove the items
from their front lawn.

**ANSWER:  Defendant Village denies the allegations contained in
Paragraph 103.**

104. Further, the VMP claims it issued the lien the next day, which was well
before the seven-day notice period was up.

**ANSWER:  Defendant Village denies the allegations contained in
Paragraph 104.**

**105.** There is no rational basis for putting a lien on Vincent and Angeline's property the day after the hearing.

**ANSWER:** **Defendant Village denies the allegations contained in Paragraph 105.**

**106.** On belief, Defendant VMP put the lien on Vincent and Angeline's property in retaliation for Michael exposing Defendant Serpico's tirade.

**ANSWER:** **Defendant Village denies the allegations contained in Paragraph 106.**

## DEFENDANT VMP'S SELECTIVE ENFORCEMENT

**107.** In every instance, the citation which Defendants imposed upon the Plaintiffs were arbitrary applications of the Code designed to target Plaintiffs.

**ANSWER:** **Defendant Village denies the allegations contained in Paragraph 107.**

**108.** The same rules were not applied to other residents in VMP.

**ANSWER:** **Defendant Village denies the allegations contained in Paragraph 108.**

**109.** Defendant VMP selectively enforced its municipal Code and policies against Plaintiffs based on assertions of their constitutional rights.

**ANSWER:** **Defendant Village denies the allegations contained in Paragraph 109.**

**110.** Several different VMP residents committed the same or similar types of purported code violations.

**ANSWER:** **Defendant Village denies the allegations contained in Paragraph 110.**

**111.** In support, the following photographs depict various Melrose Park residences with the same or worse types of purported "lawn clutter:"

    **a)** On February 21, 2021, there was a home with two mattresses thrown on its front lawn.



    **b)** On or about July 5, 2020, a residence had several pieces of unbagged garbage located in its front yard.



    **c)** On or about September 2020, a resident attempted to sell his bike on the Village owned sidewalk.



**d)** On or about February 21, 2021, a Melrose Park homeowner displayed a 15-foot skeleton wearing a Santa hat and beard.



**e)** On or about January 19, 2021, a residence put out at least 12 bright red planters or garbage cans on its front porch.



f) Several other Melrose Park homes have chairs and other lawn furniture in front of their private residences even during this winter, including:

i. A Melrose Park employee keeps several lawn furniture pieces out in front of his house, including at least four chairs, a bench, and a table.



ii. Another residence put a table and four chairs outside of their garage.





**iii.** On February 21, 2021, another home had several chairs and a table on display.



**iv.** On or about February 21, 2021, at least two Melrose Park homes had
a large front yard pergola.





**v.** On or about August 2020, the Director of Code Enforcement's home with sandbags, garbage cans, and a fallen basketball net.





**vi.** On or about August 2020, the VMP's Human Resources Director constructed a pen-like structure in the front of her home and put a couch on her lawn.



**vii.** On February 21, 2021, a home had a trampoline and a slide in its front yard.



**g)** On or about January 19, 2021, another home still had their Christmas lights and decorations up. Their front yard also contained numerous planters, figurines of animals, and other choochkie's.



**h)** On or about February 21, 2021, a Melrose Park residence about two blocks from the Director of Code Enforcement's home still had several Christmas decorations on display including seven (7) reindeer and a sleigh on its front lawn.



**i)** On February 21, 2021, several homes still had Christmas decorations on display.







**j)** Parking Violations

    **i.** Illegally parked vehicles, as depicted below:



**ii.** Vehicle blocking crosswalk and another vehicle holding the garage door up:



**iii.** Three cars parked in a municipal lot in clear violation of the "no parking anytime" signs.



**ANSWER: Defendant Village lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 111.**

### COUNT I –CLASS OF ONE VIOLATION OF EQUAL PROTECTION
(Plaintiffs v. All Defendants)

**112.** The Plaintiffs reallege each paragraph of this Complaint as if fully restated here.

**ANSWER: Defendant Village refers Plaintiffs to its answers to those Paragraphs and repeats them as if fully stated here.**

**113.** Defendant VMP, through its employees and agents and at the behest of Defendant Serpico intentionally targeted Plaintiffs for unequal treatment under the law, including that:

    **a)** Defendants' agents issued Vincent and Angeline at least 62 bogus tickets, falsely accusing them of violating the VMP's ordinance against having "noxious refuse on property." In reality, Plaintiffs merely arranged outdoor plastic patio chairs in their front yard, put up a political flag and sign, and decorated their home for Christmas. The items in their front yard are designed for outdoor use and are not at risk of "decomposing" nor do they create a threat to public health. Defendants' conduct was a deliberate, arbitrary, capricious, and malicious attempt to financially cripple Plaintiffs and deprive them of their property under color of law. The Defendants did not attempt to issue such tickets to other residents for non-existent violations of law.

    **b)** Defendants' agents issued tickets without citing which VMP ordinance was violated when it was violated or any details that would have allowed Plaintiffs to remedy the situation. This was a deliberate, arbitrary, capricious, and malicious attempt to financially cripple Plaintiffs and deprive them of their property under color of law. The Defendants did not attempt to issue such tickets to other residents for nonexistent violations of law.

    **c)** Defendants did not follow the Illinois Administrative Code when putting a lien on Vincent and Angeline's property.

**d)** Defendants issued parking tickets to Michael for petty infractions and alleged parking violations when there was deep snow cover, which reduced the available parking spots. This was a deliberate, arbitrary, capricious, and malicious attempt to inconvenience Michael. The Defendants did not attempt to issue such tickets to other residents for such other purported violations of law.

**e)** Said Defendants, acting under color of law, intimidated and coerced Plaintiffs to try to pummel them into submission or run them out of the VMP. The Defendants had no rational basis in law for taking these actions against the Plaintiffs.

**ANSWER: Defendant Village denies the allegations contained in Paragraph 113.**

114. VMP code enforcement officers arbitrarily applied express terms of the VMP Code to issue such citations.

**ANSWER: Defendant Village denies the allegations contained in Paragraph 114.**

115. As the aforementioned properties illustrate, the VMP code enforcement officers evince a near-total disregard of lawn clutter or nuisance laws except as to Plaintiffs. *See Van Dyke v. Vill. of Alsip*, No. 20-1041, 6 (7th Cir. Sep. 2, 2020).

**ANSWER: Defendant Village denies the allegations contained in Paragraph 115.**

116. The VMP wrote over 62 tickets for having certain items on their front lawn when it allowed similar types of items to remain on the property of other similarly situated property owners.

**ANSWER: Defendant Village denies the allegations contained in Paragraph 116.**

117.   Plaintiffs never had any legitimate violations. The Defendants or their agents concocted phony violations, contorted the ordinances to target Plaintiffs, vandalized Michael's property, and threatened Michael with bodily harm. These tactics were not used against any other law-abiding citizens in VMP. They were used selectively and with malicious intent to target Plaintiffs and run them out of town or financially cripple them.

**ANSWER: Defendant Village denies the allegations contained in Paragraph 117.**

118.   The actions of Defendants in singling Plaintiffs out as a class unto themselves among other residential property owners in the Village of Melrose Park for building code enforcement, parking citations, other unlawful acts as alleged in this Amended Complaint were vindictive and taken with a malicious animus and without any rational basis or legitimate governmental purpose, and, therefore, constitute a deprivation of Plaintiffs' rights to equal protection of law as guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and, thus, defendants are liable to plaintiff under 42 U.S.C. § 1983.

**ANSWER:   Defendant Village denies the allegations contained in Paragraph 118.**

119.   The VMP's ordinance violations are without legal basis as applied and because no VMP ordinance specifies what constitutes "lawn clutter" exists.

**ANSWER:  Defendant Village denies the allegations contained in Paragraph 119.**

120.    Defendants acted according to the policies and customs of the VMP.

**ANSWER:  Defendant Village denies the allegations contained in Paragraph 120.**

121.    The code enforcement and the police officers were motivated by Defendant Serpico's illegitimate animus against the Plaintiffs.

**ANSWER:  Defendant Village denies the allegations contained in Paragraph 121.**

122.    The actions of Defendant were intentional, willful, and malicious and/or in reckless disregard of Plaintiffs' rights as secured by 42 U.S.C. §1983 and the Civil Rights Act of 1991.

**ANSWER:  Defendant Village denies the allegations contained in Paragraph 122.**

123.    As a direct, foreseeable and proximate result of Defendants' unlawful actions which deprived Plaintiffs of their rights as complained of in this Amended Complaint, Plaintiffs suffered injury and damages in the form of legal fees and costs incurred in defending against Defendants' unlawful prosecution, psychological and emotional distress, and economic losses.

**ANSWER:  Defendant Village denies the allegations contained in Paragraph 123.**

<u>**COUNT II – Denial of Due Process Under**</u>
<u>**the Fourteenth Amendment**</u>
(Vincent and Angeline v. All Defendants)

**124.**    The Plaintiffs reallege each paragraph of this Complaint as if fully

restated here.

<u>**ANSWER:**</u>  **Defendant Village refers the Plaintiffs to its answer to**
**those paragraphs and repeats them as if fully stated here.**

**125.**    The Due Process Clause prevents the government from declaring that

Plaintiffs' lawful and harmless activities and conditions constitute

nuisances when such activities and conditions are not nuisances, and

any harm that could arise from such actions and conditions would be

remote and highly speculative.

<u>**ANSWER:**</u>  **Defendant Village denies the allegations contained in**
**Paragraph 125.**

**126.**    Instead, the VMP treats these activities and conditions as nuisances and

code violations to retaliate against certain citizens for asserting their

protected conduct.

<u>**ANSWER:**</u>  **Defendant Village denies the allegations contained in**
**Paragraph 126.**

**127.**    Vincent and Angeline have property interests in their home.

<u>**ANSWER:**</u>   **Defendant Village lacks knowledge or information**
**sufficient to form a belief about the truth of the allegations contained**
**in Paragraph 127.**

**128.**    Vincent and Angeline's activities and conditions are not nuisances or

violative of the Code. The Village cannot abate them or issue fines

because they do not cause any harm to others or the Plaintiffs themselves.

**ANSWER:** **Defendant Village denies the allegations contained in Paragraph 128.**

129. Vincent and Angeline were deprived, in whole or in part, of their property interests described above, under color of state law, in that they have a lien of over $15,500.00 entered against their property, which will preclude it from being sold until paid.

**ANSWER:** **Defendant Village denies the allegations contained in Paragraph 129.**

130. Vincent and Angeline were also deprived of their liberty interests in their good reputation in the community. Defendants repeatedly accused Vincent and Angeline of phony municipal violations and used the Village's police powers to cripple them financially by excessively fining them and encumbering their property.

**ANSWER: Defendant Village provides no answer to the first sentence as it has a partial motion to dismiss pending. Defendant Village denies each and every remaining allegation contained in Paragraph 130.**

131. Defendant VMP deprived Plaintiffs of fair legal proceedings by engaging in multiple acts which include submitting false ordinance violations, refusing to grant a continuance, requiring in-person hearings during a pandemic, and otherwise acting to deny Plaintiffs' fair legal proceedings.

**ANSWER:** **Defendant Village denies the allegations contained in Paragraph 131.**

132. The VMP accomplished this deprivation by harassing and retaliating against Plaintiffs by:

   **a)** Issuing phony municipal tickets, each carrying a $500 fine;

   **b)** Failing to provide a method to abate the nuisance;

   **c)** Failing to provide a legally sufficient description of the activity or conduct alleged to constitute a violation of the VMP Ordinances;

   **d)** Failing to provide a written final order that included findings of law;

   **e)** Failing to issue a determination based on the evidence presented at any of the hearings of whether a Code violation exists;

   **f)** Failing to provide the name(s) of the alleged complaining witnesses who sent emails complaining about Plaintiffs' front lawn;

   **g)** Failing to allow them to be heard before issuing default judgments against them;

   **h)** Levying a lien against their property without the requisite prove-up hearing and without waiting for the requisite timeframe prescribed by statute.

**ANSWER:** **Defendant Village denies the allegations contained in Paragraph 132.**

133. Defendants used the apparatus of the Village to violate Plaintiffs' property and liberty interests by making allegations of wrongdoing against Plaintiffs and their property, which Defendants knew at the

time to be false, for the sole purpose of targeting and harassing Plaintiffs.

**ANSWER: Defendant Village denies the allegations contained in Paragraph 133.**

134. As a direct and proximate result of the Defendants' actions, the named Plaintiffs have suffered and will continue to suffer irreparable injury to their constitutional rights.

**ANSWER: Defendant Village denies the allegations contained in Paragraph 134.**

135. As a direct and proximate result of the Defendants' campaign to harass, retaliate, and punish Plaintiffs, they have been deprived of their due process rights as guaranteed under the Fourteenth Amendment of the United States Constitution.

**ANSWER: Defendant Village denies the allegations contained in Paragraph 135.**

**COUNT III - 42 U.S.C. § 1983 DEPRIVATION OF FIRST AMENDMENT RIGHTS OF SPEECH AND EXPRESSION**
**(All Plaintiffs v. All Defendants)**

136. The Plaintiffs reallege each paragraph of this Complaint as if fully restated here.

**ANSWER: Defendant Village refers the Plaintiffs to its answers to those paragraphs and repeats them as if fully stated here.**

137. Plaintiffs' right to speak, write, and publish freely and petition the government is protected under Article 1, Section 4 of the United States Constitution, free from retaliation.

**ANSWER:** **Defendant Village denies the allegations contained in Paragraph 137.**

138. As described more fully above and incorporated by reference herein, Plaintiffs engaged in extensive protected speech on matters of public concern, including, but not limited to:

    **a)** Displaying a political sign and a political flag in front of their home;

    **b)** Arranging their chairs in the front of their home;

    **c)** Decorating the front of their home with Christmas decorations and lights; and

    **d)** Petitioning the government and publicly posting his grievances against the VMP.

**ANSWER:** **Defendant Village provides no answer to (b) and (c) as it has a partial motion to dismiss on file with regard to those topics. Defendant Village admits that a political sign and flag was displayed in front of the home. Defendant Village denies each and every remaining allegation contained in Paragraph 138.**

139. As a result of the Plaintiffs' protected activities, Defendants retaliated against them in the manner described in the preceding paragraphs.

**ANSWER:** **Defendant Village denies the allegations contained in Paragraph 139.**

140. Defendants intended by each of the actions described in the preceding paragraphs to punish and retaliate against Plaintiffs for exercising their First Amendment Rights and deterring them and others from exercising such rights in the future.

**ANSWER:** **Defendant Village denies the allegations contained in Paragraph 140.**

141.    Plaintiffs have suffered harm due to Defendants' actions and have been deprived of their rights secured under the First Amendment to the United States Constitution. This deprivation of Plaintiffs' constitutional rights is actionable pursuant to 42 U.S.C. § 1983.

**ANSWER:** **Defendant Village denies the allegations contained in Paragraph 141.**

142.    Defendants acts have caused Plaintiffs' damages such as stress, unlawful monetary judgments and liens, inconvenience, legal fees, future financial losses, and other compensatory and consequential damages.

**ANSWER:** **Defendant Village denies the allegations contained in Paragraph 142.**

**COUNT IV – 42 USC § 1983 Policy to Retaliate
against Plaintiffs to Suppress their First
Amendment Rights**
(Plaintiffs v. VMP)

143.    The Plaintiffs reallege each paragraph of this Complaint as if fully restated here.

**ANSWER:** **Defendant Village provides no answer to this Count as it has a motion to dismiss pending.**

144.    Defendant Serpico, as the Mayor of the VMP, is a final policymaker.

**ANSWER:** **Defendant Village provides no answer to this Count as it has a motion to dismiss pending.**

145.    Defendant Serpico's duties as Mayor are executive, not legislative. He has no legal authority to make up laws on his own to promulgate municipal violations in VMP.

**ANSWER:  Defendant Village provides no answer to this Count as it has a motion to dismiss pending.**

146. Through its employees and agents and at the behest of Serpico, Defendant VMP retaliated against and targeted Plaintiffs by selectively enforcing ordinances against them, putting a lien on their property, and depriving them of their rights guaranteed under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 such as the freedom to express themselves, speak, and associate freely on matters of public concern, such as grieving government actions.

**ANSWER:  Defendant Village provides no answer to this Count as it has a motion to dismiss pending.**

147. The actions described above collectively show a pattern of ongoing harassment of Plaintiffs by local officials acting under color of law.

**ANSWER:  Defendant Village provides no answer to this Count as it has a motion to dismiss pending.**

148. At all times material to this Complaint, the VMP maintained

    **a)** a policy, practice, or custom, sanctioned by Defendant Serpico, the Director of Code Enforcement, officers of the code enforcement division, officers of the police department, motivated by an improper animus of taking adverse action against Plaintiffs, including but not limited to municipal citations, parking tickets, vandalism, threats, and lien put on their property

    **b)** a policy, practice, or custom of allowing and encouraging code enforcement officers and police officers issue bogus citations or

tickets for petty reasons absent exigent circumstances to justify such citations; and/or of failing to provide its code enforcement officers adequate training to determine the presence or absence of exigent circumstances; and

**c)** a policy, practice, or custom of failing to properly train, supervise, discipline, transfer, monitor, counsel and otherwise control officers in its employ.

**ANSWER:** **Defendant Village provides no answer to this Count as it has a motion to dismiss pending.**

149.  The policies, practices, and/or customs as set forth above were maintained by Defendant VMP with deliberate indifference towards Plaintiffs' constitutionally protected rights.

**ANSWER:** **Defendant Village provides no answer to this Count as it has a motion to dismiss pending.**

150.  The aforementioned actions reflect an official policy, custom, or practice of penalizing residents and employees for discriminatory reasons and based on illegitimate animus in violation of the Fourteenth Amendment of the United States Constitution, and were committed, condoned, and perpetuated at the hands of policymakers and those to whom policy-making authority has been delegated. This makes the actions into official actions of the VMP, under *Monell*, for which the VMP should be held accountable as well.

**ANSWER:** **Defendant Village provides no answer to this Count as it has a motion to dismiss pending.**

**151.**     As a result of employing the foregoing express acts espoused by VMP

through Serpico, a final policymaker, to retaliate against Plaintiffs,

Plaintiffs suffered harm including, without limitation, substantial loss of

income, loss of enjoyment of life, and severe emotional distress.

**ANSWER:  Defendant Village provides no answer to this Count as it has a motion to dismiss pending.**

**COUNT V – Administrative Review**
(Plaintiffs Vincent and Angeline v. Defendants VMP,
Dept. of Admin. Hearings, & Dept. of Code Enforcement)

**152.**     The Plaintiffs reallege each paragraph of this Complaint as if fully

restated here.

**ANSWER:  Defendant Village refers Plaintiffs to its answers to those paragraphs and repeats them as if fully restated here.**

**153.**     Plaintiffs Vincent and Angeline bring this Count pursuant to 735 ILCS

5/3-101 et seq. against the Defendants VMP, Department of

Administrative Hearings, and Department of Code Enforcement for the

March 2, 2021 Decision which resulted in a final judgment of several

ordinance violations against them, including the following 30 violations:

4321, 4324, 4451, 4452, 4462, 4454, 4457, 4458, 4459, 4460, 4461, 4362,

4357, 4362, 4363, 4367, 4370, 4373, 4465, 4466, 4467, 4468, 4473, 4474,

4551, 4552, 4563, 4566, 4567, 4572, and 4573.

**ANSWER:  Pursuant to 735 ILCS 5/3-106 and 5/3-108(b), Plaintiffs are referred to the record, which has been filed as a separate docket entry.**

**154.** On February 2, 2021, Defendant VMP Department of Administrative Hearings held a hearing for the aforementioned ordinance violations during its Department of Code Enforcement court call.

**ANSWER:** **Pursuant to 735 ILCS 5/3-106 and 5/3-108(b), Plaintiffs are referred to the record, which has been filed as a separate docket entry.**

**155.** Each of the ordinance violations alleged Plaintiffs Angeline and Vincent violated Village of Melrose Park Code 8.48.050. which states in relevant part:

> No part or the contents of, or substance from any sink, privy or cesspool, nor any manure, ashes, garbage, offal, rubbish, dirt, junk, nor any refuse or waste or thing which by its decomposition could, or would become offensive to human beings or detrimental to health, or tend to injure the character of the property in the vicinity thereof, or create or tend to create a nuisance, shall be by any person thrown, deposited or placed upon any property within the Village, whether such property is enclosed or otherwise, without the written permission of the board

**ANSWER:** **Pursuant to 735 ILCS 5/3-106 and 5/3-108(b), Plaintiffs are referred to the record, which has been filed as a separate docket entry.**

**156.** The code enforcement officers also included the following description on each ticket: "creating a nuisance – clutter in the front lawn."

**ANSWER:** **Pursuant to 735 ILCS 5/3-106 and 5/3-108(b), Plaintiffs are referred to the record, which has been filed as a separate docket entry.**

**157.** Plaintiffs, Vincent and Angeline requested a continuance for the February 2, 2021 hearing, but the Hearing Officer denied their request for a continuance and entered a judgment against them.

**ANSWER:  Pursuant to 735 ILCS 5/3-106 and 5/3-108(b), Plaintiffs are referred to the record, which has been filed as a separate docket entry.**

**158.** Plaintiff Michael never filed an appearance at the February 2, 2021 hearing nor was he sworn in as a witness during the hearing.

**ANSWER: Pursuant to 735 ILCS 5/3-106 and 5/3-108(b), Plaintiffs are referred to the record, which has been filed as a separate docket entry.**

**159.** Plaintiffs Vincent and Angeline have never received a court order from the February 2, 2021 hearing from either the Hearing Officer or the Department of Code Enforcement.

**ANSWER: Pursuant to 735 ILCS 5/3-106 and 5/3-108(b), Plaintiffs are referred to the record, which has been filed as a separate docket entry.**

**160.** Plaintiffs, Vincent and Angeline did not violate VMP ordinance 8.48.050.

**ANSWER:  Pursuant to 735 ILCS 5/3-106 and 5/3-108(b), Plaintiffs are referred to the record, which has been filed as a separate docket entry.**

**161.** On or about February 22, 2021, Plaintiffs, Vincent and Angeline timely filed a Motion to Set Aside the Default Judgment for the aforementioned ordinance violations.

**ANSWER: Pursuant to 735 ILCS 5/3-106 and 5/3-108(b), Plaintiffs are referred to the record, which has been filed as a separate docket entry.**

162.    On March 2, 2021, the Hearing Officer heard and denied their Motion because the February 2, 2021 hearing was heard on the merits and that Plaintiff Michael was Vincent and Angeline's representative.

**ANSWER: Pursuant to 735 ILCS 5/3-106 and 5/3-108(b), Plaintiffs are referred to the record, which has been filed as a separate docket entry.**

163.    The Hearing Officer also dismissed several of Vincent and Angeline's tickets that were being heard that morning and also on the future court date of April 7, 2021 based on "compliance."

**ANSWER: Pursuant to 735 ILCS 5/3-106 and 5/3-108(b), Plaintiffs are referred to the record, which has been filed as a separate docket entry.**

164.    On March 2, 2021, Vincent and Angeline's chairs were still in front of their house.

**ANSWER:  Pursuant to 735 ILCS 5/3-106 and 5/3-108(b), Plaintiffs are referred to the record, which has been filed as a separate docket entry.**

165.    A true and correct copy of the March 2, 2021 Decision is attached hereto as Exhibit 1, which constitutes a final administrative decision of the Defendant Code Enforcement Division by the VMP Department of Administrative Hearing Officer.

**ANSWER: Pursuant to 735 ILCS 5/3-106 and 5/3-108(b), Plaintiffs are referred to the record, which has been filed as a separate docket entry.**

166. Plaintiffs Vincent and Angeline desire a judicial review of the March 2, 2021 Decision.

**ANSWER: Pursuant to 735 ILCS 5/3-106 and 5/3-108(b), Plaintiffs are referred to the record, which has been filed as a separate docket entry.**

167. Plaintiffs Vincent and Angeline have exhausted all available remedies under the Administrative Review Law and have no further plain, speedy, or adequate remedy under the law.

**ANSWER: Pursuant to 735 ILCS 5/3-106 and 5/3-108(b), Plaintiffs are referred to the record, which has been filed as a separate docket entry.**

168. This Count for administrative review was timely brought within 35 days.

**ANSWER: Pursuant to 735 ILCS 5/3-106 and 5/3-108(b), Plaintiffs are referred to the record, which has been filed as a separate docket entry.**

169. The March 2, 2021 Decision of the VMP Department of Administrative Hearings and Department of Code Enforcement must be reversed for one or more of the following reasons:

   a) The Decision is contrary to law;

   b) The Decision is an abuse of discretion;

   c) The Decision is against the manifest weight of the evidence in that all of the factual findings in the decision fall outside the permissible scope of the VMP's ordinances, does not even reference the evidence relied upon, were not heard on the merits, and are wrong; and

**d)** The Decision is not sufficiently clear and does not sufficiently demarcate between findings of fact and conclusions of law, thereby precluding meaningful judicial review of the Decision altogether.

**ANSWER:** **Pursuant to 735 ILCS 5/3-106 and 5/3-108(b), Plaintiffs are referred to the record, which has been filed as a separate docket entry.**

170. Plaintiffs Vincent and Angeline request that the Hearing Officer provide a transcript of all proceedings before the Department of Code Enforcement Hearings including all exhibits offered and entered into evidence, the full and complete Code Enforcement Hearing Officers' file(s) shall be filed as part of the record, as well as a certified copy of the entire record of proceedings under review.

**ANSWER:** **Pursuant to 735 ILCS 5/3-106 and 5/3-108(b), Plaintiffs are referred to the record, which has been filed as a separate docket entry.**

171. While incorporated by reference herein already, all other Counts of this Amended Complaint are expressly incorporated by reference in this ARL Count as under the purview of the ARL statute.

**ANSWER:** **Pursuant to 735 ILCS 5/3-106 and 5/3-108(b), Plaintiffs are referred to the record, which has been filed as a separate docket entry.**

**172.** While this matter is pending, Plaintiffs Vincent and Angeline request that the aforementioned Defendants or any other VMP employee or contractor enter any judgments or liens against their property until this Count is resolved.

**ANSWER: Pursuant to 735 ILCS 5/3-106 and 5/3-108(b), Plaintiffs are referred to the record, which has been filed as a separate docket entry.**

**COUNT VI –**
**Indemnification** (Plaintiffs
v. Defendant VMP)

**173.** The Plaintiffs reallege each paragraph of this Complaint as if fully restated here.

**ANSWER: Defendant Village repeats its answers to those paragraphs as if fully stated here.**

**174.** Defendant VMP is obligated to assume financial responsibility for the actions committed by its officials or employees, including Defendant Serpico.

**ANSWER: Defendant Village denies the allegations contained in Paragraph 174.**

**AFFIRMATIVE DEFENSES**

1. With respect to Plaintiff's Administrative Review Act count, any requests for review that were not made within 35 days of the decision are barred pursuant to 735 ILCS 5/3-101 *et seq.*

2. The Village is immune from liability for punitive damages pursuant to 42 U.S.C. 1981a(b)(1); Baker v. Runyon, 114 F.3d 668, 669, 672 (7th Cir. 1997); 745 ILCS 10/1-206; 745 ILCS 10/2-102.

Respectfully submitted,
Defendant VILLAGE OF MELROSE PARK


By: */s/ Cynthia S. Grandfield*
     Cynthia S. Grandfield


K. Austin Zimmer
Cynthia S. Grandfield (ARDC No. 6277559)
DEL GALDO LAW GROUP, LLC
(312) 222-7000 (t)
grandfield@dlglawgroup.com
*Please direct all mailings to:*
1441 S. Harlem Avenue
Berwyn, Illinois 60402