UNITED STATES DISTRICT COURT
IN THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL COZZI, et al. ) | |
| Plaintiffs, ) | |
| v. ) | Case No. 21 CV 00998 |
| ) | |
| VILLAGE OF MELROSE PARK, ) | |
| et al., ) | |
| Defendants. ) | |

**MOTION TO COMPEL PURSUANT TO FED. R. CIV. P. 37 AND LR 37.2**

Despite repeated requests to produce, Michael Cozzi has refused to produce relevant social media, videos, photos and text messages in this case. Defendants believe that the discovery sought will further document that Michael has been enraged for years after being prosecuted and convicted of violent crimes, including crimes against his own family, that he followed police officers and Village staff and employees around and video recorded and threatened them, and then repeatedly refused, while living at his parents residence, to make the property compliant despite repeated requests because he bizarrely believed the Village was acting at the direction of his brother. Defendants now move to compel the responses.

I. Background

"Joe Cozzi is literally gonna get lit[1] the FUCK UP ONLINE LIVE AND SO IS HIS PAL RON SERPICO!!!"

--December 6, 2020 Facebook post by Plaintiff Michael Cozzi
See Police Report dtd. 12.06.2020 attached as *Exhibit 1*.

---

[1] Urban dictionary indicates the phrase or colloquialism "lighting someone up" can be a reference to shooting someone.
*See* https://www.urbandictionary.com/define.php?term=light%20him%20up (accessed on March 31, 2022).

1

> <u>See also</u>  M. Cozzi Dep. Part I, p. 130:20-131:5 attached as *Exhibit 2* (admitting that he made the post but denying he was threatening violence).

Michael Cozzi has a history of physical violence and of, in fact, being convicted of violent crimes – including against his brother and his own father.  He himself has admitted that he has an "extensive criminal history."  <u>See</u> https://www.vfpress.news/articles/breaking-news/man-who-recorded-melrose-park-mayor-got-nearly-15k-in-tickets/ (last accessed on April 4, 2022). Despite his demurrals that he "gets along with everybody," Cozzi has been criminally charged with punching a cop in the face….more than once and has pled guilty in both cases. <u>See</u> M. Cozzi Dep. Part I, p. 53:7-9,14:16 attached as *Exhibit 2*; <u>See</u> *Exhibit 3*; *Exhibit 4*; <u>See</u> Court Records attached as *Exhibit 5* p. 3-4; Court Records attached as *Exhibit 6* p. 2-4.  During one incident while, according to the police report, assaulting a police officer by punching him in the head and with a closed fist, Michael Cozzi shouted: "I don't have to do what you tell me.  Do you know who the fuck I am?"  <u>See</u> *Exhibit 4*.  In another incident, he approached his brother Joe's car while Joe's wife was in the car as well with a baseball bat and began swinging the bat at the window while screaming "I'm going to kill you motherfucker!"  <u>See</u> *Exhibit 7;* <u>See also</u> V. Cozzi Dep. p. 21:17-23:24 attached as *Exhibit 8*; J. Cozzi Dep. p. 41:17-43:7 attached as *Exhibit 9*.

     The most serious incident involved his father, again his brother Joe, and Joe's 14-year-old son at the time.  Joe Cozzi arrived at his parents' house with his son to visit with them.  At the time he arrived he heard Michael shouting.  He had

been yelling at his parents to try to get money out of them.² At one point, Michael grabbed his father from behind around the neck and pulled him backwards. When Michael saw his brother Joe he started screaming "Come on motherfucker. I'll kill you motherfucker." Michael then drove up on the grass towards his brother Joe and his father. They both had to jump out of the way to keep from getting hit by the car, leaving his father with bleeding cuts on his chest and arms due to grabbing his chair to get out of the way of the car and falling on the railing. The State's Attorney approved three counts of aggravated felony assault against Michael in relation to that incident. See *Exhibit 10* p. 3-4.

     Michael Cozzi was again found guilty of lesser charges in 2015 in relation to the incident and was sentenced to probation and community service. See Court Records attached as *Exhibit 11* p. 3-6. He then left town and went to Vegas. He returned to Vegas in 2019 and was promptly arrested on a bench warrant issued pursuant to a petition to revoke from the finding of guilty in 2015. See *Exhibit 11* p.2-3. At the time of his return in 2019, his parents, Vincent Sr. and Angeline, were in the hospital. After Michael showed up at the hospital on multiple occasions and recorded people, including his parents as well as hospital staff, on video and disturbed patients and hospital staff he was arrested for trespass after multiple warnings by Village police and hospital security. See Police Reports attached as *Group Exhibit 12*, p. 2-3. However, Michael Cozzi oddly attributes this arrest to his brothers and the mayor. See *Exhibit 2*, p. 66:12-19; 68:12-23.

---

² His parents were in their mid-70s at this time. Michael was in his mid-thirties.

3

Because of his parents' medical conditions at the time, Michael Cozzi's brothers, Joe and Vincent Jr., had power of attorney in 2019. See J. Cozzi Dep. p. 22:4-17 attached as *Exhibit 9*. In relation to that, his brothers asked that the car that Michael was driving be taken from him as it was in the name of his father, not Michael. See *Exhibit 13*. Michael describes this as the car being "stolen" from him by his brother Joe. See M. Cozzi Dep. p. 102:9-16 attached as *Exhibit 2*. After their 2019 medical issues the parents moved from the home they had lived in in many years in the Village to a more accessible home in the Village with the help of their sons Joe and Vincent Jr. See J. Cozzi Dep. p. 11:14-22; 103:2-104:6 attached as *Exhibit 9*. While one of their wives was helping to move things from one house to another, the police were called because she believed that Michael was on the property and would possibly become violent. See *Exhibit 13*. In another incident, since he has come back into town, Michael began following her around at a Village festival until others intervened. See J. Cozzi Dep. p. 60:4-61:15 attached as *Exhibit 9*.

Michael Cozzi is in his mid-forties and has rarely worked. The vast majority of his adult life he has lived with his parents. He has not spoken to his brothers Vincent Jr. and Joe for years. He has a particular obsession and animus for his brother Joe – likely because Joe filed criminal charges against him more than once. He has driven by his house several times while honking the horn, Joe's house has been egged several times since Michael has come back into town, and there have been multiple threatening phone calls as well as posts on Facebook from Michael along

4

with Michael's (now deceased friend), Joe Calamia, believed to have been a Latin King, making statements such as they're "going to come to town on horses" and "come after Mayor Serpico;" "going to beat me up;" to "meet them in a forest" and lastly that Michael is going to "come to the hospital and bust his brother's skull in." See J. Cozzi Dep. p. 43:12-44:3; 44:15-46:8 attached as *Exhibit 9*. Joe Cozzi testified that he has tried to block his brother on social media on several occasions, but each time he creates dual accounts and keeps posting again. Joe was also the victim of spoof calling where he would try to call his brother Vince Jr. and it would instead go to a Village employee's phone, Larry Cushion. The same thing would happen with Vince Jr. Eventually they heard laughing on the phone and talking on the other end, which they believed to be Amber Principe, the wife of Jim Principe.[3] See Joe Cozzi Dep. p. 44:15-46:8 attached as *Exhibit 9*. Michael's brother Vince Jr. and his wife Karen also received text messages threatening them with physical harm in September of 2019[4] stating that he was going to give his brother Vince, Jr. the "beating of [his] life," that "[y]our brother is going to beat the living fuck out of you" and "I'm going to slap you silly, you scumbag." See *Group Exhibit 12*, p. 8.

Michael Cozzi has a particular obsession with Mayor Serpico because he seems to believe that somehow his brother Joe and the mayor are friends.[5] He has even gone so far as to file a police report claiming that his brother Joe gets

---

[3] Jim Principe is the former IT Director of the Village and was terminated. He has also sued the Village and is represented by the same attorney as in this case.
[4] Again, while their parents were in the hospital.
[5] In the recorded exchange between Michael and the mayor, the mayor says: "I don't even like Joe Cozzi."

5

preferential treatment from the Village. See *Exhibit 14*. When one of his brothers called and asked that their mother be examined by a nurse, Michael again filed a police report stating that his brother was "harassing" him. See *Exhibit 15*. Indeed, Michael testified bitterly during his deposition that his brother Joe "calls the cops on people." See M. Cozzi Dep. p. 78:6-17 attached as *Exhibit 2*.

After his return from Vegas, Michael Cozzi again moved in with his parents in 2020. He has since continuously attempted to accuse his brothers Joe and Vincent Jr. of stealing money from his parents, even taking his father to the Village police department in May of 2020 during the height of the pandemic. See Police report attached as *Exhibit 16*. Vincent Jr. and Joe have not seen their parents since Michael has come back. See J. Cozzi Dep. p. 31:10-15 attached as *Exhibit 9*; See V. Cozzi, Jr. Dep. p. 27:6-12 attached as *Exhibit 17*. The phones were disconnected and several of the parents' friends have contacted Vincent Jr. and Joe saying that they cannot get a hold of them since Michael has come back. See J. Cozzi Dep. p. 35:1-24 attached as *Exhibit 9*.

In 2020, while living with his parents, Michael also has friends out at all hours of the night smoking and drinking in the chairs at the house. Citations are issued and fines are imposed after Michael refuses to put away the chairs and other clutter despite multiple requests. See Dkt. No. 24, p. 3-4, *Exhibit 2,* p. 82:24-83:2.[6]

---

[6] The Code Enforcement Directors and Inspectors further testified to this at their depositions, which is being transcribed.

I. *Defendants' Discovery Requests and Plaintiffs' Objections*

Plaintiffs' discovery responses and production have been replete with boilerplate objections and evasive from the start. During written discovery, the Defendants served upon Michael Cozzi the attached requests to produce. The requests to produce, among other things, requested:

4. Please produce copies of any and all posts to Facebook, Instagram, Snapchat, or TikTok regarding the Mayor, the Village of Melrose Park, or any Melrose Park employee or official from 2019 to present.

5. Please produce copies of any and all video recordings regarding or featuring the Mayor, the Village of Melrose Park, Melrose Park Police, or any Melrose Park employee or official from 2019 to present.

6. Please produce copies of any and all email communications with any non-attorney regarding the Mayor, the Village of Melrose Park, Melrose Park Police, or any Melrose Park employee or official from 2019 to present.

7. Please produce copies of any and all voicemails, text messages, or emails to and from any of your siblings concerning your parents, their financial assets, their real estate, or their vehicles from 2019 to present.

8. Please produce copies of any and all video recordings or photos at or around Gottlieb Hospital from 2019 to present.

9. Please produce any and all photos of Village of Melrose Park Police, the Mayor, Code Enforcement, or other Melrose Park employee from 2019 to present.

See Def. First Set of Req. to Prod. to M. Cozzi attached as *Exhibit 18*.

Plaintiff responded with a series of boilerplate objections at the beginning of the requests to produce and then objected to each and every one of these requests to produce. See M. Cozzi's Responses to Requests to Produce attached as *Exhibit 19* and Supplemental Responses attached as *Exhibit 20*.

7

> II. *Defense Counsel's attempt to resolve differences pursuant to Fed. R. Civ. P. 37 and LR 37.2*

Defense counsel reached out to Plaintiffs' counsel via email and requested availability for a phone conference to attempt to resolve differences pursuant to Rule 37 and Local Rule 37.2. Defense counsel also listed a general summary of objections that Plaintiffs' counsel should be prepared to discuss. See Email dtd. 11.15.2021 attached as *Exhibit 21*. On November 18, 2021, counsel for the parties had a telephone conference and discussed the issues. Defense counsel further detailed the reasons for the request, agreed not to pursue certain requests and held firm on others. At the end of the conference, pursuant to Plaintiffs' counsel's request, defense counsel sent a summary of items that she wanted supplemented and a timeframe for supplementing them via email. See Email dtd. 11.18.2021 attached as *Exhibit 22*.

Defense counsel then followed up on multiple occasions until she received some supplement from Plaintiff. However, the majority of supplementation consisted of taking out the boilerplate objections at the beginning and moving them down to each and every request to produce and producing copies of photos contained in the complaint in native format and other documents received in response to Plaintiffs own subpoenas to non-parties. Essentially, the objections remained, and Plaintiffs' counsel only produced what they wanted to produce without actually responding to the requests. Defense counsel followed up with Plaintiffs' counsel on multiple occasions regarding the objections and failure to comply with discovery requests. In late December of 2021, defense counsel paused her attempts at receiving further

8

discovery information when she was advised by Plaintiffs' counsel that all the Plaintiffs were ill and that Vincent Cozzi, Sr. was currently hospitalized. Subsequent to that, Counsel for Michael Cozzi failed to remedy the objections and defense counsel stated that she would presume that they were at an impasse, particularly with respect to social media, which Cozzis' counsel agreed with in late February of 2022.

On March 16, 2022, defense counsel took the deposition of Michael Cozzi pursuant to amended notice. In that deposition, Michael Cozzi confirmed that he had posted the threatening statement on Facebook regarding the mayor and his brother Joe. See *Exhibit 2*, p. 130:20-131:5. He further testified that he has posted on social media on more than one occasion regarding the Village or the mayor and that he has texted and sent recordings and videos to others concerning the Village and the mayor. See *Exhibit 2*, p. 121:13-20; 44:2-24; 134:8-23. He also testified that he had hidden that post, on the advice of his attorney, as well some other posts and some posts he had decided to hide on his own. See *Exhibit 2*, p. 128:15-130:19. He also admits, consistent with the statements of other individuals and his brothers' testimony, that he has been standing outside the Village and recording Village police officers since late 2019 and his run-in with hospital security and the police upon returning to the area from Vegas. See *Exhibit 2*, 64:3-66:14.

III.  *Relevance of Requests*

Pursuant to Rule 26, the scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense." See Fed. R. Civ. P. 26(b)(1). Further,

9

information "need not be admissible in evidence to be discoverable." See Id. These discovery requests have direct bearing on the claims made in this case and, in several instances, are raised by the complaint itself. For example, Michael Cozzi himself alleges that he engaged in protected speech on Facebook in paragraph 46 of the Second Amended Complaint. See Dkt. No. 40, ¶46. Further, the Second Amended Complaint expressly denies that Michael Cozzi ever harassed the mayor or the Board of Trustees. See Dkt. No. 40, ¶104-105. If making death threats and threats of physical violence on Facebook is not harassment, it is unclear what is.

While requesting social media generally without a specific basis can be an invasion of privacy, in this instance it is not. Private social media is subject to being compelled where it is relevant and proportional to the needs of the case. See In re Cook Medical, Inc., IVC Filters Marketing, Sales Practices, and Product Liability Litigation, 2017 WL 4099209, *5 (S.D. Ind. 09/15/2017)(Baker, Mag. J.); see also Higgins v. Koch Dev. Corp., No. 3:11-CV-81-RLY-WGH, 2013 WL 3366278, at *2 (S.D. Ind. July 5, 2013) (finding the production of social media content to provide evidence of emotional suffering was relevant when the request was limited in scope to information relating to the plaintiffs' "enjoyment of life, ability to engage in outdoor activities, and employment"); Appler v. Mead Johnson & Co., LLC, No. 3:14-CV-166-RLY-WGH, 2015 WL 5615038, at *3 (S.D. Ind. Sept. 24, 2015) (finding a request limited to social media content that involved plaintiff and defendant was "limited to clearly target content that [was] relevant and that [would] lead to admissible evidence."); Ye v. Cliff Veissman, 2016 WL 950948, *2 (N.D. Ill.

10

03/07/2016)(Gilbert, Mag. J.)(holding that a court may compel production of Facebook posts upon a threshold showing of relevance and citing to *Equal Emp't Opportunity Comm'n v. Simply Storage Mgmt., LLC*, 270 F.R.D 430, 434-35 (S.D. Ind. 2010); *Higgins v. Koch Development Corp.*, 2013 WL 3366278, at *2 (S.D. Ind. July 5, 2013); *Thompkins v. Detroit Metro. Airport,* 278 F.R.D. 387, 388 (E.D. Mich. 2012).)

The discovery request in this case is highly relevant in this case and is specifically limited in time and topic.  Defendants have made more than a threshold showing that Michael Cozzi's social media in this cause is relevant.  Facebook posts are referenced in the complaint.  Michael admitted to making the threatening post on Facebook towards his brother and the mayor at the beginning of this brief.  Multiple additional people have commented regarding Michael's threatening social media accounts.  See *Exhibit 1* p.2 (reference to ongoing issue of his repeated postings of harassing and threatening messages directed at brother, law enforcement, and mayor); Dkt. 24-1, p. 6, 9-10 (reference to "the STORM is coming" and several other threatening videos/posts posted on account threatening mayor and law enforcement for years).  As discussed in the preceding section, his brother Joe also testified that multiple people have told him Michael posted to social media threatening physical violence against him as well as the mayor and both brothers received messages from Michael that he was going to crack his skull or beat him to death.  This has also made his text messages and emails around the same time frame and regarding the same topic relevant.  See, e.g., Estate of Loury by Hudson

11

v. City of Chicago, 2017 WL 11562006, *1-3 (N.D. Ill. 03/14/2017, St. Eve, J.)(holding that incriminating evidence related in a civil rights case related to a police involved shooting contained on cell phone was relevant and officers were entitled to discovery so long as limited in time and scope). In this case, Michael Cozzi is alleging a First Amendment claim. To make out a First Amendment retaliation claim, a plaintiff must show: (1) that they engaged in activity protected by the First Amendment; (2) they suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a "motivating factor" in the decision to take the retaliatory action. See Kozel v. Village of Dolton, 804 F. Supp.2d 740, 744 (N.D. Ill. 2011)(Kennelly, J.). "Fighting words" and threats of physical violence are not protected speech. See generally Chaplinsky v. New Hampshire, 315 U.S. 568 (1942)(holding "fighting words" are unprotected speech); See, e.g., Watts v. U.S., 394 U.S. 705, 707 (1969)(distinguishing threats against the President from constitutionally protected speech). Further, timing is relevant in First Amendment retaliation claims. See Manuel v. Nalley, 966 F.3d 678, 680 (7th Cir. 2020). Further still, this discovery seeks information that the Defendants believe will further show that any speech Michael Cozzi engaged in was not on a matter of public concern, but private matters related to his own personal grievances and family disputes. See Snyder v. Phelps, 562 U.S. 443, 451-455 (2011)(holding that protest by Westboro Church at military member's funeral was speech on public concern that was protected by the First Amendment).

In addition, Plaintiffs are alleging an Equal Protection Class-of-One claim based on the mayor having a "personal animus" against the Cozzis. As discussed in the background, this discovery would be relevant to provide context, that the Village did not "target" the Cozzis, and would serve to demonstrate that Michael Cozzi is the one with the animus, who personally repeatedly refused to comply with the Village's requests because somehow he thought that his brothers were behind it. He is a long-term unemployed man in his forties with an extensive criminal history that lives with his parents and developed an obsession with the Village and the mayor – believing that somehow, they were doing things at his brother Joe's request. See https://www.vfpress.news/articles/breaking-news/man-who-recorded-melrose-park-mayor-got-nearly-15k-in-tickets/ (last accessed on April 4, 2022)(stating that Michael Cozzi believes the Village and mayor is doing the bidding of his estranged brother). The timeframe is limited from 2019 because that is when Michael came back and when he became disruptive at the hospital where his parents were being treated. In fact, in a recording that Michael Cozzi made when he appeared at administrative adjudication court in February of 2021[7] the hearing officer can be heard repeatedly asking Michael why he cannot put away the chairs so as to not get any more fines and Michael refuses to do anything until "he talks to his brother Joe" or "his parents get their money back from Joe," at some point appearing to try to force the Village's police to charge his brother with a crime asking for a

---

[7] This recording was just produced to defense counsel in late March of 2022 after Michael Cozzi admitted during his deposition that he had recorded that as well.

13

continuance until this "could all be figured out" with respect to his brother Joe.[8] He continues to say this despite the hearing officer's repeated admonishments that his brother has nothing to do with that and could he please put the chairs away.

In addition, the fact that Michael Cozzi has made multiple threats of physical violence against others, has actually engaged in physical violence against others, and a documented instance of spoofing, seems to go against any assertion by Michael that the alleged "death threat" text he claims to have received and alleges is connected with the Village or the mayor. Indeed, when he received the text he called the Village police, showed them the text, attempted to call the number, and stated his belief that the text was likely from his brother due to a long dispute. See *Exhibit 23,* p. 3.

Lastly, Michael has produced a copy of the recording of the conversation between him and the mayor. However, the copy has no native data and it is impossible to determine when the recording occurred. This is important because it is not believed that the conversation took place during a Village meeting, instead, it is believed it occurred prior to an Electoral Board meeting and certainly not during any public comment time at a meeting. Village Electoral Board meetings occurred from mid-January through the beginning of February, so there are several dates this could have occurred. See Agendas attached as *Group Exhibit 24.* Cozzis' counsel has stated that defendants may examine the data on the phone itself with respect to

---

[8] During the recording between Michael and the mayor, the mayor also says "trust me Michael, you're doing it on purpose." He responds "Honestly, I'll admit it, in a way I was."

14

this video but have made no affirmative steps to make that happen. The Defendants would also request that that be ordered to occur by a date certain.

WHEREFORE, the Defendants respectfully request that its motion to compel be granted pursuant to Fed. R. Civ. P. 37 and ILND LR 37.2 with respect to Defendants' Requests to Produce Nos. 4-9 in native format to the extent possible with all historical data preserved and that Plaintiff Michael Cozzi be required to produce responses to said requests within 14 days of the Court's order. Defendants further request that Michael Cozzi be compelled to provide his cell phone for scanning by a designated third-party forensic discovery expert and also provide passwords to each of his social media accounts for review by same third-party for responsive information. Further, Defendants request that Michael Cozzi be ordered to provide, under oath, a list of all posts, emails, or texts he has deleted or hidden that are responsive to any of Defendants' Requests to Produce Nos. 4-9.

    Respectfully submitted,
    Defendants

    By: */s/ Cynthia S. Grandfield*
        Cynthia S. Grandfield

K. Austin Zimmer
Cynthia S. Grandfield (ARDC No. 6277559)
DEL GALDO LAW GROUP, LLC
grandfield@dlglawgroup.com
(312) 222-7000 (t)
*Please direct all mailings to:*
1441 S. Harlem Avenue
Berwyn, Illinois 60402