**UNITED STATES DISTRICT COURT**
**IN THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL COZZI, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 21 CV 00998 |
| | ) | |
| VILLAGE OF MELROSE PARK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**STATEMENT WITH RESPECT TO DISPOSITIVE MOTIONS**
**PURSUANT TO DKT NO. 113**

NOW COMES the Defendants, the VILLAGE OF MELROSE PARK and Mayor RONALD SERPICO by and through their attorney Cynthia S. Grandfield of Del Galdo Law Group, LLC and as their statement provides:

1. The Second Amended Complaint currently has the following counts remaining: (a) §1983 Class of One Equal Protection (Count I); (b) §1983 First Amendment Retaliation Claim (Count III); (c) §1983 "Policy" Claim [construed as a *Monell* claim] (Count IV); (d) Administrative Review Act claim (Count V).

2. The Defendants intend to file for summary judgment on all counts for several reasons.

3. First, with respect to the Equal Protection Class-of-One Claim, defendants believe the evidence adduced during discovery has demonstrated that the Plaintiffs will be unable to demonstrate that they had been intentionally treated differently from others similarly situated or that there is no rational basis for the difference in

1

treatment. *Fares Pawn, LLC v. Ind. Dep't of Fin. Insts.*, 755 F.3d 839, 845 (7th Cir. 2014)(must be lack of rational bais); *Black Earth Meat Market, LLC v Vill. of Black Earth,* 834 F.3d 841, 851-852 (7th Cir. 2016)(holding that a restaurant/bar was not responsible for similar externalities, and had not been the subject of neighbors' complaints); *McDonald v. Winnetka*, 371 F.3d 992, 1009 (7th Cir. 2004)(comparator important to make sure to avoid distortion of the scope of protection in 'class of one' equal protection claims). This includes but is not limited to the evidence adduced was that: the Village only cited Plaintiffs after receiving complaints and asking them to comply; the daily tickets are a common practice in the Village (as well as other municipalities) to encourage compliance; the Plaintiffs were unable to identify similar comparators that were also the subject of complaints that were treated in differently; the Code Enforcement Director, the Inspectors, and the Village's Hearing Officer all offered testimony as to why they believe the condition of the property was in violation of Village Code; they further all testified that had the Plaintiffs complied or showed up at a hearing and advised they intended to comply that the Village would have dismissed all tickets. Additionally, the Village's Hearing Officer is a licensed attorney and hearing officer under state law who is an independent contractor with the Village and is not subject to the mayor's supervision or permission with respect to his rulings and handling of Village citations.

2. Second, with respect to the First Amendment Retaliation Claim, evidence adduced during discovery establishes that Michael Cozzi did not engage in

any protected speech under the First Amendment that could provide a causal link sufficient to survive summary judgment. Further, neither Angeline nor Vincent Cozzi engaged in any speech at all pursuant to the First Amendment, and they were the undisputed owners of the property. Further, even if Michael Cozzi was able to sufficiently establish First Amendment protected activity, precedent does not support the idea that Michael Cozzi can substitute his own First Amendment activities for those of his parents, as the tickets were issued to this parents and the trust, which had his parents as the beneficiaries. *See, e.g., Norman-Nunnery v. Madison Area Technical College*, 625 F.3d 422, 433 (7th Cir. 2010); *Swanson v. City of Chetek*, 719 F.3d 780, 783 (7th Cir. 2013)(holding that resident that did not have property interest to establish standing with respect to the unequal treatment of Swanson's fence work because he did not have an ownership interest, even though he resided at the property).

3. With respect to the Mayor, the evidence adduced during discovery has failed to demonstrate sufficient personal involvement in the issuing of any tickets or fines to hold him liable for either the First Amendment retaliation or Equal Protection Class-of-One Claim. Indeed, the mayor testified in his deposition that he wasn't even aware of the amount of the fines until the onset of the case and the parties engaged in initial settlement discussions. *See Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988); *Potts v. Moreci*, 12 F. Supp.3d 1065 (N.D. Ill. 2013); *Barnes v. Broy*, No. 08 C 290, 2009 WL 1702077 at *3-5 (S.D. Ill. June 16, 2009).

4. If the underlying §1983 counts do survive, the Village believes that there was insufficient evidence adduced during discovery to proceed under the final policymaker or the pattern or practice standard so as to establish *Monell*.

5. The Defendants further note that a suggestion of death was filed by the Plaintiffs with respect to Vincent Cozzi but never filed a proper motion for a substitution of party for the estate and intend to move for summary judgment with respect to same. *See* Dkt. No. 85; Fed. R. Civ. P. 25(a).

6. In the event that the Court grants summary judgment with respect to all federal claims, the Defendants would argue that the Court should decline to exercise supplemental jurisdiction over the remaining state law administrative review act claim. However, if the Court finds that some federal counts remain, the Defendants note that an Administrative Review Act claim is a non-jury administrative review claim determined by the judge upon the record and the briefs of the parties. 735 ILCS 5/3-101 *et seq*.

7. Lastly, during discovery it was adduced via the evidence that several facts alleged in the Complaint were inaccurate or otherwise had no basis such as: (a) that the Village had remote meetings via Zoom except for administrative hearings on citations or that the Cozzis or any representative of the Cozzis ever requested a remote option or a continuance at any time due to COVID-19 (*See* Dkt. No. 40, ¶110, 112) – There was no testimony that any of them requested a remote hearing or continuance because of COVID-19. Instead, both Angeline and Michael Cozzi testified as to skepticism with respect to certain CDC recommendations with

respect to COVID-19 and Dr. Fauci anyway and Michael Cozzi is on subscriber lists of many extremist groups that promote the idea that, for example, the vaccine is a way to kill white Christians and replace them with people of color as well as a wide variety of other conspiracy theorist groups and postings such as that Trump had the election stolen and that they should "Stop the Steal"; (b) that Michael Cozzi had his exchange with the Mayor during a Village Board meeting and the public comment portion of the meeting (*See* Dkt. No. 40, ¶96-99, 101) – it was an Electoral Board meeting with members of the public on the Electoral Board that includes lawyers that specialize in election law, the Electoral Board had not commenced, and it was definitively not during any public comment portion of any meeting of any kind; (c) that the Cozzis were not aware of the reasons for the citations and tried to comply (*See* Dkt. No. 40, ¶28, 35) – Michael Cozzi made multiple posts on social media around the time of the citations about getting tickets for chairs outside and has video from his phone of interacting with Code Enforcement inspectors and the specifically telling him what needed to be done so as not to issue tickets (which was affirmed by the deposition testimony of the inspectors as well); (d) that the Mayor or someone otherwise associated with him sent the "death threat" text to Michael Cozzi (*See* Dkt. No. 40, ¶93-95 – multiple third-party subpoenas produced no evidence and the Mayor has a flip phone and is not tech savvy amongst other reasons; (e) that Michael Cozzi had contacted Village Building Inspector Billy Rich to attempt to arrange a "home visit" and otherwise determine or "stop" the citations (*See* Dkt. No. 40, ¶35-37) – instead Mr. Rich was contacted for possible private work

5

as a contractor on the Cozzi home by Michael Cozzi that had absolutely nothing to do with the citations; (f) that no notice was received of the citations for the January 5, 2021 hearing on the first set of tickets (*See* Dkt. No. 40, ¶81) – instead the Plaintiffs produced a photo Michael Cozzi took of the hearing notice and he testified that he did not attend or tell his parents despite receiving the notice for a variety of reasons from "not wanting to ruin their Christmas" to that the "Village always gives continuances;" (g) that the fines would "financially cripple" the Cozzis (*See* Dkt. No. 40, ¶45, 140 – while a lien was placed on the Cozzis' residence, no effort was made or has been made to collect (nor is it the Village's practice to do so), instead this is all resolved at the time of sale or transfer of the property; and (h) many others. Thus, this would further streamline any presentation of evidence in that the Defendants believe it can establish several material facts genuinely not in dispute pursuant to Fed. R. Civ. P. 56(g).

                                                          Respectfully submitted,
Defendants VILLAGE OF MELROSE PARK and Mayor RONALD SERPICO

By: */s/ Cynthia S. Grandfield*

K. Austin Zimmer
Cynthia S. Grandfield (ARDC No. 6277559)
DEL GALDO LAW GROUP, LLC
grandfield@dlglawgroup.com
(312) 222-7000 (t)
1441 S. Harlem Avenue
Berwyn, Illinois 60402

6